HAMPTON HARDWARE, INC.

v.

COTTER & COMPANY, INC.

Civ. A. No. 3:93–1722–J.

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 9, 1994.

Alan B. Rich, Jennifer G. Jackson, Johnson & Gibbs, Dallas, TX, for plaintiff.

Stephen A. Kennedy, Haynes and Boone, Dallas, TX, for defendant.

*ORDER*

BOYLE, United States Magistrate Judge.

Pursuant to the District Court's Order of Reference filed December 7, 1993, came on to be heard February 9, 1994, plaintiff's **Motion to Limit Defendant's Contact with Class Members,** filed August 5, 1993.[1] The undersigned held a hearing on this issue on January 19, 1994, and having heard the arguments of the parties, **ORDERS** that the plaintiff's motion be **GRANTED** as modified below.

This is a potential class action brought by plaintiff, Hampton Hardware, Inc. ("Hampton") against defendant Cotter. The issue to be determined is whether three letters sent to potential class members by defendant, Cotter & Company, Inc. ("Cotter") constitute an abuse of the class action process warranting an order prohibiting such contacts pursuant to Rule 23(d) Fed.R.Civ.P.

By way of background, Cotter is a member-owned wholesaler of hardware and other related merchandise. Individually owned True Value Hardware Stores and V & S Variety Stores own Cotter. Cotter operates on a cooperative basis for the benefit of its members. A benefit of membership is the ability to purchase hardware goods at lower prices. Cotter is a nationwide organization with approximately 10,000 members.

Plaintiff, Hampton, operates a member hardware store in Oak Cliff, Texas. Plaintiff has filed this suit alleging usury, breach of contract and conversion. Hampton brings the action against Cotter on behalf of "all individuals or organizations which, during any time from May 28, 1989, to the present, have owned, in whole or in part, a "True Value" hardware store located in the State of Texas and have ever contracted for, been charged, or have paid a 3% (or greater) per month "service charge" (interest) with, by or to Cotter & Company, Inc." (Plaintiff's First Amended Petition at 4).

Shortly after the lawsuit was filed the three letters at issue were sent potential class members by Daniel Cotter, President and CEO of Cotter & Company. The letters, admitted in evidence at the hearing as plaintiff's Exs. 1, 2 and 3, respectively, contain information about the lawsuit and urge the potential class members not to participate in the lawsuit. Specifically, the **July 16, 1993,** letter contained the following language regarding the Hampton suit:

> While we believe that Cotter will win this case for many reasons, it is important that you understand the enormous potential cost to your Company due to this class action. Your team in Chicago will spend thousands of hours on this lawsuit, pulling old documents, reconstructing records, traveling to Dallas and explaining the service charge policy and how your Company operates. Teams of lawyers will be required, all at a huge cost. These and other expenses needed to protect your company in this suit will be endless. All of this will cost you precious dollars and us time from our mission which is to make you succeed in the hardware and variety business.

> What can you do to avoid this waste of time and money? Decide not to participate in this lawsuit. Under the law you may be given the opportunity to join the class. By refusing to join the class, you save your Company time and expenses which ultimately will be returned to you in the form of your patronage dividend. Every member who joins the class adds to the expense and time needed to protect your Company and you. The expense will, ultimately, come out of your pocket.

The **August 16, 1993,** letter stated:

> It is extremely important that you are fully aware of the class action lawsuit that one Texas Member is filing against Cotter & Company. Considering the expense and potentially negative impact on your Company, awareness of this case and your support are vital. The case is called *Hampton, et al v. Cotter & Company,* and is filed by a Member from Dallas. He and his lawyer want to represent all Texas Members against Cotter & Company.

---

1. This case was originally filed in the 116th Judicial District Court, Dallas County, Texas, Cause No. 93–05718–5. The case was removed to the United States District Court for the Northern District of Texas on August 26, 1993.

By not participating in this suit, you will help save your Company expense in dollars and time.

The **October 26, 1993,** letter stated:

As many of you know one East Texas Member is so supportive of his Company, and so strongly believes that this case is improper and without justification, he began sending releases and waivers to several other Members. He has been forwarding back to us copies of these waivers which many of you have signed.

I believe the support you are showing your Company, after having invested so much of your time and money in it, is sensible and proper. By asking you to join the class, Hampton is asking you to sue yourself.

Hampton contends that these contacts are improper and overreaching and should be prohibited by the court. It requests an order prohibiting the defendant from contacting prospective class members concerning this litigation.

Cotter opposes the motion maintaining that such an order limiting class contacts would violate the First Amendment based on *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). It is also Cotter's position that the contacts in question were required by SEC disclosure rules and were part of a routine dissemination of information to its members.

Against this backdrop, the undersigned reviews the relevant authority on limiting class contacts.

### Analysis

"Class actions serve an important function in our system of civil justice. They present, however, opportunities for abuse as well as problems for courts and counsel in the management of cases." *Gulf Oil,* 452 U.S. at 99, 100, 101 S.Ct. at 2199, 2200. Due to possible abuses a district court may enter orders in class actions which govern the conduct of counsel and parties. *Id.* Communications found violative of the principles of Rule 23 include misleading communications to the class members concerning the litigation.

Communications that misrepresent the status or effect of the pending action also have been found to have a potential for confusion and/or to adversely affect the administration of justice. *Id.,* 452 U.S. at 101 n. 12, 101 S.Ct. at 2200 n. 12. Courts have also condemned attempts in a communication to affect a class member's decision to participate in the litigation, or to undermine a class plaintiff's cooperation with confidence in class counsel. *In re School Asbestos Litigation,* 842 F.2d 671, 682 n. 23 (3rd Cir.1988). Letters to class members warning them that they might be liable for costs should they participate in the class action and urging them to disassociate themselves from the suit have also been held improper. *Erhardt v. Prudential Group, Inc.,* 629 F.2d 843, 845 (2nd Cir.1980).

Before a district court can issue an order limiting class contacts the Supreme Court requires "a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil,* 452 U.S. at 101, 101 S.Ct. at 2200. Such an undertaking should result in "a carefully drawn order that limits speech as little as possible consistent with the rights of the parties under the circumstances" *Id.* 452 U.S. at 102, 101 S.Ct. at 2201. Finally, in issuing such an order the district court must give "explicit consideration to the narrowest possible relief which would protect the respective parties." *Id.*

Having reviewed the guiding principles in determining whether to limit class contacts, the undersigned now turns to the facts at hand.

The first issue to be determined in this case is whether the three letters constitute the type of misleading communications justifying court intervention. The letters clearly fall within this category. Regardless of the stated purpose of the letters—a routine dissemination of information to members—any common sense reading of them reveals that they are an attempt to prevent member participation in the class action. See *Kleiner v. First National Bank of Atlanta,* 751 F.2d 1193, 1201 n. 16 (11th Cir.1985).[2]

---

**2.** In *Kleiner,* the court found as to the communications at issue: "Numerous facts lead to the

almost inescapable conclusion that the point of the communications campaign was not, as the

Members are warned of the potential cost to them. (July 16, 1993, letter). They are specifically advised not to participate in the lawsuit (July 16, 1993, letter; August 16, 1993, letter). They are told that by participating in the lawsuit they are suing themselves. (October 26, 1993, letter). In short, the clear message is that if they participate in this "improper" lawsuit that they will pay.

The fact that the defendant and potential class members are involved in an on-going business relationship, further underscores the potential for coercion. *Kleiner*, 751 F.2d at 1202 (other citations omitted). Members must necessarily rely upon the defendant for dissemination of factual information regarding hardware goods and for lower prices in purchasing those goods. They are therefore particularly susceptible to believing the defendant's comments that the lawsuit will cost them money. Cotter, on the other hand, an interested party in the litigation faces a conflict of interest in advising members on the merits of participation in the lawsuit due to its direct pecuniary interest in the outcome.

 Testimony at the hearing by member Houston Maddox, owner of a member hardware store, established a serious potential for harm to the interests of the class action by these three letters. (Hrg.Tr. at 20, 21) Actual harm need not be proven to justify an order limiting class contacts. Rather, an order limiting contacts is justified upon a finding of "a likelihood of serious abuses." *In re School Asbestos Litigation*, 842 F.2d at 671 citing *Gulf Oil*, 452 U.S. at 104, 101 S.Ct. at 2202 (other citations omitted). That the interests embodied in Rule 23 might be hindered is a sufficient finding upon which to base an order limiting contacts. "Rule 23 expresses 'a policy in favor of having litigation in which common interests, or common questions of law or fact prevail, disposed of where feasible in a single lawsuit.'" *Gulf Oil*, 452 U.S. at 99 n. 11, 101 S.Ct. at 2199 n. 11. The three letters work directly against this principle by attempting to reduce the class members participation in the lawsuit based on threats to their pocketbooks. For all of these reasons, communications by Cot-

ter to the members regarding the lawsuit must be prohibited.

Having decided that the contacts are improper and must be limited, the next issue for determination is the appropriate and most narrow possible relief to protect the parties to this suit.

 In framing the order, care must be taken to limit speech as little as possible. However, as with *Kleiner, supra*, this case does not involve the type of protected, noncommercial political expression protected by the Fifth Circuit in *Gulf Oil*. *Kleiner*, 751 F.2d at 1204–05. Rather the communications at issue here, involve commercial speech which does not call "into play the full panoply of First Amendment safeguards against prior restraint". *Id.* at 1205 citing *Bernard v. Gulf Oil Co.*, 619 F.2d 459, 473 (5th Cir.1980). Rather, the type of speech involved in this case, encouraging potential class members not to join in the suit, is grounded in the "economic interests of the speaker and the audience." *Id.* at 1203 n. 22 (other citations omitted). Orders limiting this type of commercial speech are appropriate if "grounded in good cause and issued with a 'heightened sensitivity' for First Amendment concerns." *Id.* A finding of good cause has been found to rest upon four criteria including: "the severity and likelihood of the perceived harm; the precision with which the order is drawn; the availability of a less onerous alternative; and the duration of the order." *Id.* at 1206 citing *United States Postal Service v. Athena Products, Ltd.*, 654 F.2d 362, 367–68 (5th Cir.Unit B 1981) *cert. denied*, 456 U.S. 915, 102 S.Ct. 1768, 72 L.Ed.2d 173 (1982).

With respect to the first factor, the perceived harm, the fact that the members must rely upon the defendant for crucial information as to pricing renders potential class members particularly vulnerable to coercion. Cotter determines pricing for its members and is now warning them that prices will go up if the lawsuit continues. Members are thus less likely to feel that participation in the lawsuit is in their best interest. This in

Bank would have it, to alleviate consumer confusion, but rather to solicit as many exclusions as

possible before the court was alerted to the operation."

turn undermines the goals of Rule 23. Thus all communications regarding the suit should be prohibited.

As to the second factor above, a balance must be struck between protecting potential class members from making decisions based upon one-sided information from an interested party, while at the same time taking care not to interfere with the on-going business relationship between class members and the defendant. Therefore, business communications must continue, however, communications as to the instant litigation must end.

As to the third factor, an order any less restrictive, would not effect the purposes of Rule 23. It is difficult to conceive of any advice from Cotter regarding the lawsuit that is not rife with the potential for confusion and abuse given Cotter's interest in the suit. Therefore, as to the third factor above, there is no less onerous alternative than to prohibit all communications regarding the lawsuit. This prohibition, however, should not be read to suggest that members will receive no information regarding the lawsuit. Rather, pursuant to Rule 23(c) Fed.R.Civ.P.; once the lawsuit has been conditionally certified as a class action by the District Court and the Court requires notice be given to the potential class members, information regarding the action will be then filtered through the "impartial and open medium of court supervised notice." *Kleiner*, 751 F.2d at 1207. The objective of notifying class members of the class action and their opportunity to participate along with information about the nature of the action will be accomplished. This manner of communication eliminates the potential for influencing class members with one-sided information.

Finally, focusing on the fourth factor, the duration of the order, the order should limit defense contacts with potential class members up through the time of trial. *Id.* at 1207 citing *In re San Juan Star*, 662 F.2d 108, 117 (1st Cir.1981). Any order shorter in duration could prove problematic and is unnecessary. Because of the on-going business rela-

tionship between the defendant and class members, the business relationship will not be disrupted in any manner by the duration of this order. Additionally, given the court required notice regarding the class action, potential class members will receive impartial information regarding the lawsuit. In short, there is no legitimate purpose for defendant's to communicate with class members regarding the lawsuit prior to trial, and such communications as discussed previously invite abuse.[3]

In sum, the order in this case, consistent with the principles set forth in *Gulf Oil*, should prohibit contacts between defendants and potential class members up through the time of trial. The court supervised notice will provide objective information to potential class members upon which they can base a decision to participate or not participate in this action. Business related communications, will, as in the past, continue between Cotter and the class members.

■ The final matter which must be addressed is plaintiff's counsel's specific request that a corrective notice be sent to prospective class members at defendant's expense. In support of this position, plaintiff cites *In re Federal Skywalk Cases*, 97 F.R.D. 370, 378 (W.D.Mo.1983), *Pollar v. Judson Steel Corp.*, 33 Fair.Empl.Prac.Cas. (BNA) 1870 (N.D.Cal.1984), and *Impervious Paint Industries, Inc. v. Ashland Oil*, 508 F.Supp. 720, 724 (W.D.Ky.1981). These cases, however, are distinguishable from the case at bar. Specifically, in two cases the offending actions took place after class certification and court-approved notice to the class members. *Federal Skywalk*, 97 F.R.D. at 377 (improper contact included a copy of the class notice along with oral legal advice which had been specifically omitted from the notice prepared by the Court); *Impervious Paint*, 508 F.Supp. at 722, 723 (defendants made a "end-run" around the court's supervisory authority.) The *Pollar* case provides insufficient information to make a valid comparison and is not controlling.

---

3. Defendant argues that the Securities and Exchange Commission may require disclosure of this lawsuit and an order prohibiting contacts may run contrary to SEC rules and regulations.

However, in the event of this type of conflict, a motion to the Court for leave to make the required disclosures would certainly remedy this problem.

In this case although a clear potential for abuse was established there was little evidence of actual harm. Moreover, the class has yet to be certified. To send a corrective notice at this point with little evidence of actual harm prior to the court's certification of this class, would be premature and potentially confusing. If the Court determines that the class should be certified, its notice to class members will provide objective information about the case to members as required by Rule 23(c). For these reasons, a corrective notice should not be sent.

Accordingly, for the foregoing reasons, plaintiff's **Motion to Limit Defendant's contact with Class Members**, is **GRANTED** as follows:

It is **ORDERED** that the defendant and defendant's counsel are prohibited from contacting potential class members in any manner with regard to the instant litigation.

It is **FURTHER ORDERED** that this limitation on contacts will remain in effect until the date of trial or alternatively a court's order denying motion for certification.

It is **FURTHER ORDERED** that defendant's contacts with class members for business purposes may continue.

SO ORDERED.