Loretta BURRELL, Linda L. Brown, Catherine McAfee, John Grant, John McDowell, Phyllis Miller, Susan Robertson, and Karen Sloan, Individually and on behalf of those similarly situated, Plaintiffs,

v.

CROWN CENTRAL PETROLEUM, INC., Defendant.

No. 1:97–CV–357.

United States District Court, E.D. Texas, Beaumont Division.

Oct. 21, 1997.

---

James Payne, Reuben A. Guttman, Brian P. McCafferty of Provost & Umphrey, Beaumont, TX, Michael D. Hausfeld, Cyrus Mehr from Cohen, Milstein, Hausfeld & Toll, Washington, DC, for Plaintiffs.

Fraser A. McAlpine, Mark Schwartz, Allan G. King, Anne G. Bruckner of Littler and Mendelson, Houston, TX, for Defendant.

*MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR LIMITATIONS ON CROWN'S EX PARTE COMMUNICATIONS WITH CLASS MEMBERS*

SCHELL, Chief Judge.

Before the court is Plaintiffs' Motion for Limitations on Crown's Ex Parte Communications with Class Members, filed on August 8, 1997. Defendant filed a response on September 9, 1997. Plaintiffs filed a reply on October 6, 1997. Upon consideration of the motion, response, reply, and applicable law, the court is of the opinion that Plaintiffs' motion should be DENIED.

### BACKGROUND

Plaintiffs are employees of the defendant, Crown Central Petroleum ("Crown"). They filed this lawsuit as a putative class action against Crown on June 30, 1997, alleging racial and gender discrimination at Crown's Texas refineries, located in Tyler and in Pasadena. Plaintiffs' claims arise under 42 U.S.C. § 1981 and under 42 U.S.C. § 2000e.

The putative class and subclasses of employees in this lawsuit have not been certified. The potential members of such classes and subclasses include all African-American employees of Crown in Texas, and all female employees of Crown in Texas. The present motion concerns an e-mail and announcement posted by Crown to its employees, and some informational meetings held at its administrative offices in Bellaire, Texas. Plaintiffs allege that Crown improperly contacted potential members of the class, and ask the court to order that Crown be enjoined from such ex parte contact.

### A. July 2, 1997, E-mail and Printed Announcement

It is undisputed that on July 2, 1997, Crown sent an e-mail to all of its employees with e-mail access, describing three new legal actions that had been filed against the company. It is also undisputed that Crown posted a paper copy of the e-mail in some of its facilities. The communication was styled as a "Crown Central Company Announcement." It described how Crown was a target of a union "corporate campaign," related to an ongoing, eighteen-month labor dispute at the Pasadena refinery. Part of the alleged union campaign was a series of lawsuits, one of which is the instant litigation.

### B. The Bellaire Meetings

It is also undisputed that Crown held at least two meetings with employees at administrative offices located in Bellaire, Texas. Employees were given the option of attending either meeting, depending on which was more convenient. The meetings were conducted by William Tyler, Crown's Human Resources Director. Ned Rosenberg, Crown's Vice-President of Supply and Transportation, was also in attendance; Mr. Rosenberg is the son of Crown CEO and majority shareholder, Henry Rosenberg.

Plaintiffs submitted to the court a "sworn declaration" of one person who attended one of the meetings. Apparently, the meetings served the same function as the e-mail: to discuss present litigation against the company, including the action before this court. The declaration submitted by Plaintiffs states that Mr. Tyler "indicated the lawsuit was generated by the union. The gist of his talk was that we should not be caught up in the discrimination lawsuit because it was tied to the union." Pls.' Mot., Ex. B, para. 7. It goes on to state, "He did not name any names but made generalizations that made it seem that by being part of the lawsuit we would be associating ourselves with [the union]." Pls.' Mot., Ex. B, para. 10. At the meeting, Mr. Tyler used an overhead projector with slides, paper copies of which Crown included in its Response. Def.'s Resp. at Ex. A–4.

### C. Plaintiffs' Allegations

Plaintiffs maintain that the e-mail and meetings were an obvious attempt to link their lawsuit to the union corporate campaign. The Plaintiffs argue that such communications are an effort to intimidate employees, and especially non-union or salaried employees, from joining the lawsuit. According to the motion, "the Defendant has misrepresented to putative Class members that this lawsuit is a tool of a union corporate campaign and suggested that participation in

the lawsuit would result in taking sides against the company in a labor dispute. Such communications are intended to chill participation by putative class members in this litigation." Pls.' Mot. at 1–2. The Plaintiffs insist that their lawsuit has nothing to do with the labor dispute or the alleged corporate campaign.

Crown admits that it believes the lawsuit is a tool of the unions. Def.'s Resp. at 5. In fact, it includes a history of the labor dispute in its Response.[1] Def.'s Resp. at 5–7. Crown maintains, however, that its communications with the employees regarding this litigation are only normal updates on the labor dispute and the events incident to it. Crown argues that it does not intend to intimidate anyone, and that it has a right to inform employees of its position in a labor dispute and related litigation that affect the company's future. Def's Resp. at 9–10.

### RELIEF REQUESTED

In the present motion, Plaintiffs request that the court order Crown to cease various communications with appropriate members of "the class."[2] But there has been no class certified in this case, and the issue of certification has not yet been submitted by the parties or decided by the court. Therefore, the court must first determine whether it has the power to order limitation of contact with members of an uncertified class[3]

The power of a district court to enter orders limiting contact between parties to class actions is well-established within Rule 23:

> Class actions serve an important function in our system of civil justice. They present, however, opportunities for abuse as well as problems for courts and counsel in the management of cases ... Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties. But this discretion is not unlimited, and indeed is bounded by the relevant provisions of the Federal Rules.

*Gulf Oil v. Bernard*, 452 U.S. 89, 99–100 [101 S.Ct. 2193, 2199–2200, 68 L.Ed.2d 693] (1981) (citations omitted); *see also* FED. R. CIV. P. 23(d)(3), (5). Similarly, "[d]ue to possible abuses a district court may enter orders in class actions which govern the conduct of counsel and parties. Communications found violative of the principles of Rule 23 include misleading communications to the class members concerning the litigation." *Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 632 (N.D.Tex.1994) (citing Gulf Oil, 452 U.S. at 99 [101 S.Ct. at 2199]); *see also Kleiner v. First Nat'l. Bank of Atlanta*, 751 F.2d 1193, 1203 n. 21 (11th Cir.1985).

*In Kleiner*, the defendant was soliciting exclusion requests from possible opt-out

---

1. The lockout has been a very public and contentious one. Crown believes that union employees sabotaged their Pasadena plant on numerous occasions, and the union publicly accuses the top management of Crown of using company assets for personal expenses.

2. Plaintiffs move for relief, asking the court to order that:

   1. Defendant not engage in any ex parte communication with nonmanagerial class members about this litigation, absent prior notice in writing to Plaintiffs' counsel and receipt of a written court order permitting such communication;
   2. Defendant limit ex parte contact with its managerial class members to discussion of those acts, omissions, or statements for which Crown might be liable;
   3. Defendant submit a list of all managerial class members and a description of their pay

grade and duties within fifteen days of the court's order. For the purposes of the ex parte contact allowed under request # 2, the "managerial class members" will be limited to the names submitted on this list.
Proposed Order, Pls.' Mot.

3. In their amended complaint, Plaintiffs allege a class action under Rules 23(a), and (b)(2) and (b)(3) of the Federal Rules of Civil Procedure. As of yet it has not been submitted or decided whether this action satisfies the prerequisites under 23(a), and if so, whether the action would fall under the mandatory class action provision of 23(b)(2), or the "opt-out" provision of 23(b)(3). *See* 7A CHARLES A. WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1759 (1986) ("[E]ven when the court determines that the action satisfies all the requirements of Rule 23(a), it also is necessary that the action fall within one of the three categories of class suits described in Rule 23(b).")

claimants in a 23(b)(3) class action. The Eleventh Circuit noted that "When confronted with claims pressed by a plaintiff class, it is obviously in defendants' interest to diminish the size of the class and thus the range of potential liability ... Such conduct reduces the effectiveness of the ... class action for no reason except to undermine the purposes of the rule." *Kleiner*, 751 F.2d at 1202 (citations omitted). The court ruled that the defendant's ex parte solicitation violated a protective order already issued by the district court that limited contact with members of the class. *Id.* at 1206. The court also found that the contacts might undermine the purposes of Rule 23. *See id* at 1202. In *Kleiner*, however, the litigation was farther along than in the present case. The class was certified, the notices to the class were already approved, and the court had already issued instructions on how much contact the defendant was allowed to have with class members. *Id.* at 1196–1197.

A closer parallel to the instant case appeared in *Hampton Hardware*. There, the court issued a limitation on ex parte contact of potential class members in a class that had not yet been certified. The court noted that if a defendant was allowed to have unlimited ex parte contact with putative class members, contact which was specifically designed to reduce the size of the potential class, then the purposes of Rule 23 would be undermined. *Id.* at 632–633.

The court held that the effect of a defendant attempting to influence potential plaintiffs not to join an embryonic class action would be just as damaging to the purposes of Rule 23 as a defendant that influences members of an already-certified class to opt out. *Id.* at 632. A limitation on ex parte contact was therefore appropriate in order to fulfill the purposes of Rule 23. *Id.* ("Courts have ... condemned attempts in a communication to affect a class member's decision to participate in the litigation, or to undermine a class plaintiff's cooperation with confidence in class counsel.")

██ Unlimited contacts by defendants with class members or potential class members may serve to undermine the purposes of Rule 23, by allowing defendants to reduce their liability by encouraging potential class members not to join the litigation. Therefore, under the circumstances presented here, where an alleged class action has been filed but certification has not yet been decided, a court may issue a limitation on ex parte contact under Rule 23, if it is clear the defendant is attempting to engage in conduct which would undermine the purposes of the rule.

### ANALYSIS

██ Having decided that the court can limit the ex parte contact regarding a class that has not yet been certified, the next issue is whether Crown's conduct merits an order of limitation. An order limiting communications between parties and class members is a prior restraint of speech. *Bernard v. Gulf Oil Co.*, 619 F.2d 459, 467 (5th Cir.1980), *aff'd*, 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). The district court should only consider the narrowest possible relief "that limits speech as little as possible consistent with the rights of the parties under the circumstances." *Gulf Oil*, 452 U.S. at 102, 101 S.Ct. at 2201. The movant does not have to show specific detriments to plaintiffs or the plaintiff class. *Kleiner*, 751 F.2d at 1206. A showing of actual harm is not necessary. *Hampton Hardware*, 156 F.R.D. at 633. "[I]t is unnecessary for a trial court to issue particularized findings of abusive conduct when a given form of speech is inherently conducive to overreaching and duress." *Kleiner*, 751 F.2d at 1206.

Plaintiffs cite *Hampton Hardware* for the proposition that ex parte contact with potential class members should be enjoined in situations where an ongoing commercial relationship exists, because of its inherently coercive nature. Pls.' Reply at 5 (citing *Hampton Hardware*, 156 F.R.D. at 633). They cite the actual and potential dangers that exist when litigation looms over a continuing business relationship. *Id; see also Kleiner*, 751 F.2d at 1202 (holding that one party's economic status may cause it to forego certain rights it would otherwise have against the other party). The fear is that, "Crown's employees, particularly its salaried employees, face a ... coercive atmosphere. The

employees rely on Crown for their livelihood. Any intimation from Crown that participation in the lawsuit will be viewed unfavorably by Crown coercively discourages participation in the class action lawsuit." Pls.' Mot. at 8.

■ But an order limiting class contacts must be based on "a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil,* 452 U.S. at 101, 101 S.Ct. at 2200; *see also Hampton Hardware,* 156 F.R.D. at 632. "To the extent that the district court is empowered … to restrict certain communications in order to prevent frustration of the policies of Rule 23, it may not exercise the power without a *specific record showing by the moving party of the particular abuses by which it is threatened."* *Gulf Oil,* 452 U.S. at 102, 101 S.Ct. at 2201 (citing *Coles v. Marsh,* 560 F.2d 186, 189 (3d. Cir.), *cert. denied,* 434 U.S. 985, 98 S.Ct. 611, 54 L.Ed.2d 479 (1977)) (emphasis added). Absent a clear record and specific findings of realized or threatened abuses, an order cannot be justified under the relevant standard.

*In Hampton Hardware,* a member of a cooperative association of hardware stores filed suit against the association. In response, the association sent letters to the individual members, urging them not to join the lawsuit. All three letters were before the court in its consideration of the ex parte motion. The first letter stated that joining the lawsuit would be at an "enormous potential cost to your Company" and that "[a]ll of this will cost you precious dollars and us precious time from our mission." *Hampton Hardware,* 156 F.R.D. at 631. The second letter stated: "By not participating in this suit, you will help save your Company expense in dollars and time." *Id.* at 632. Finally, the third letter read, in relevant part: "By asking you to join the class, [plaintiff] is asking you to sue yourself." *Id.* The court held that the letters were improper as an attempt "to reduce the class members [sic] participation in the lawsuit based on threats to their pocketbooks." *Id.* at 633.

Similarly, in *Kleiner,* the defendant engaged in a telephone campaign intended to reduce the size of the potential class by encouraging possible claimants to opt out of the litigation. Evidence showed that counsel for the defendant instructed the defendant's sales force to "do the best selling job they had ever done" in order to get customers to opt out of the class action, *Kleiner,* 751 F.2d at 1198, and that the defendant forced one salesperson to resign when he refused to participate. *Id.* at 1198 n. 9.

In the present case, the court recognizes that an ongoing business relationship, such as employee and employer, may cause communications between litigants to be coercive. *Kleiner,* 751 F.2d at 1202 (citing Note, *Developments in the Law—Class Actions,* 89 Harv. L.Rev. 1318, 1600 (1976)). The court also agrees with the Plaintiffs that *Kleiner* and *Hampton Hardware* hold that where there is a relationship that is inherently coercive, the court need not make a finding that a particular abuse has occurred. However, the cases do not eradicate the requirement of a clear record of the *threatened* abuses. *See id.* at 1205 (citing *Gulf Oil,* 452 U.S. at 101, 101 S.Ct. at 2200); *see also Hampton Hardware,* 156 F.R.D. at 632.

■ It is not enough that a *potentially* coercive situation exists. The court must have "a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil,* 452 U.S. at 101, 101 S.Ct. at 2200. While actual harm does not have to be shown, there must be some evidence that justifies an interference with Defendant's speech. The court cannot issue an order without evidence that a potential for serious abuse exists. In the cases cited above, the actual abuse or potential for abuse was clearer than in the present case. Here, the Plaintiffs have not provided the court with evidence to show that Crown has abused the process or attempted to undermine the purposes of Rule 23.

### A. July 2, 1997, E-mail and Printed Announcement

■ The court has before it the text of the e-mail and printed announcement published to Crown employees. Nothing in the e-mail/announcement indicates that the compa-

ny was threatening its employees if they decided to participate in the class action. *See* Pls.' Mot., Ex. A; Def.'s Resp., Ex. A–3. There are no explicit or implicit threats made in the announcement; the company simply states that it has been sued, and that it believes the lawsuit to be a union strategy. Plaintiffs have provided no evidence, other than argument and speculation, that implicit or explicit threats were attached to the e-mail or its paper copy. *Cf Hampton Hardware*, 156 F.R.D. at 633 (evidence of communications gave a specific record of threats "to the pocketbooks" of potential plaintiffs.) With no evidence of coercion, abuse, or even potential abuse, an order limiting contact is inappropriate.

## B. The Bellaire Meetings

Neither is there evidence that Crown's meetings with its employees were misleading, coercive, or meant to undermine the purposes of Rule 23. Plaintiffs have submitted a "sworn declaration" stating that Defendant threatened the putative class members. Pls.' Mot., Ex. B. A "sworn declaration" can be considered by the court, in the absence of an affidavit, if it is sworn under penalty of perjury that it is true and correct. 28 U.S.C. § 1746. The declaration attached to Plaintiff's motion fulfills this requirement, and therefore can be considered.

But the sworn declaration submitted by Plaintiffs attests to "generalizations" and "the gist of" the presentation. The court can only place a prior restraint on Crown's speech with a clear record and specific findings. *See Gulf Oil, supra.* "Generalizations" and "the gist of" a presentation do not present a clear record and specific evidence upon which to base a finding, because one person's subjective impression of the meeting and its implied tone is insufficient to make a clear record.

Finally, Crown has included in its Response the overhead slides used in its presentation. Def.'s Resp., Ex. A–4 at 2–6. While there are references to the litigation, the references are solely that the litigation has been filed. Def's Resp., Ex. A–4 at 4. There is no evidence that the company misled the employees in its presentation, or that

the company tried to discourage participation in the lawsuit. Simply because the company chooses to keep its employees informed of litigation affecting the company does not attach an improper motive. Without evidence of coercion, misleading statements, or efforts to undermine the purposes of Rule 23, the court cannot make the proper findings required by the Supreme Court in *Gulf Oil Co. v. Bernard.* The plaintiffs currently in the litigation still work for Crown. If, at some future date, Crown crosses the line into improper contact or coercion, then plaintiffs may re-urge their motion. At the present time, however, there is no evidence upon which to base an order limiting communications with potential class members.

## CONCLUSION

As the record currently stands, Crown has communicated to putative class members about the litigation. But there is no evidence to show that the e-mail, announcement, or meetings were misleading, coercive, or an improper attempt to undermine Rule 23 by encouraging putative class members not to join the suit. *Cf Kleiner*, 751 F.2d at 1202; *Hampton Hardware*, 156 F.R.D. at 632. There is also no evidence to show the potential for abuse is so great as to warrant an interference with Defendant's right to engage in commercial speech with its employees.

Therefore, the court ORDERS that Plaintiffs' Motion for Limitations on Crown's Ex Parte Communications with Class Members is hereby DENIED.