In re AIR COMMUNICATION AND SAT-
ELLITE INC., individually and on behalf
Of all others similarly situated, Plaintiff,

v.

ECHOSTAR SATELLITE
CORPORATION,
Defendant.

No. 01SA188.

Supreme Court of Colorado,
En Banc.

Jan. 22, 2002.

Hill & Robbins, P.C., Robert F. Hill, Laura J. Donson, Denver, CO, Purvis, Gray & Gordon, LLP, John A. Purvis, Beth Morrison Klein, Boulder, CO, Attorneys for Respondent Air Communication & Satellite, Inc.

The Overton Law Firm, Thomas J. Overton, Denver, CO, Attorney for EchoStar Satellite Corporation.

Justice HOBBS delivered the Opinion of the Court.

We issued a rule to show cause in this original proceeding under C.A.R. 21 to review the District Court's order in a pending class action case under C.R.C.P. 23. On October 6, 2000, plaintiff Air Communications & Satellite, Inc. (ACS) filed an action against defendant EchoStar Satellite Corporation (EchoStar) on behalf of itself and allegedly similarly situated retailers. Upon learning of a communication by EchoStar to putative class members affecting the litigation, the Arapahoe County District Court (District Court) issued an order on March 23, 2001:(1) prohibiting EchoStar from communicating in the future with putative class members, absent District Court prior review of the communication, about matters relating to the litigation; and (2) requiring the mailing of a corrective notice, at EchoStar's expense, to members of the putative class with whom EchoStar had communicated after ACS filed the class-action complaint.

We hold that the District Court did not abuse its discretion in ordering the mailing of a corrective notice regarding EchoStar's prior communication affecting the litigation. We hold, however, that the District Court abused its discretion in requiring, during the pre-certification period, prior review of future communications between EchoStar and retailers who are putative class members. We direct the District Court to vacate the section of its order that imposed the prior review requirement. Because the proposed corrective notice would notify the putative class members about the prior review requirement, we direct the District Court to delete this portion of the notification before its mailing. Accordingly, we discharge the rule in part and make the rule absolute in part.

## I.

EchoStar sells satellite television receivers, subscriptions to its "DISH" Network Programming, and related equipment and service to consumers through a network of retailers (Retailers). ACS and the putative class members are current and former Retailers who entered into standardized form agreements EchoStar prepared authorizing them to sell EchoStar products and services. On October 6, 2000, ACS filed a class-action complaint against EchoStar in the Arapahoe County District Court alleging breach of contract, damages, and asserting other claims for relief on behalf of itself and others similarly situated.

ACS sought certification of a class constituting all Retailers who had signed the EchoStar "Non Commissioned Retailer Agreement" and the "Exclusive Bounty Hunter Agreement." ACS alleged that it had signed both of these agreements, that EchoStar had breached the terms of these agreements and their implied covenants of good faith and fair dealing, that EchoStar had systematically failed to pay sums due to it and all other Retailers who had signed those agreements, and that EchoStar had engaged in other illegal conduct designed to impair Retailers' rights under the agreements and tortiously interfered with their business relationship with customers.

Those agreements provided for court litigation of disputes in the Federal District Court for Colorado or in a State of Colorado district court, in the event that the federal court lacked jurisdiction. The complaint alleged that EchoStar had its principal place of business in Colorado, that ACS was a Florida corporation that had suffered less than $75,000.00 in damages, and that jurisdiction and venue were proper in the District Court for Arapahoe County.

The complaint ACS filed described the class as follows:

> The Class consists of those persons or entities within the United States who signed the Retailer Agreement and the Bounty Hunter Agreement and have suffered losses less than $75,000.00.

> Excluded from the Class are (a) the Defendants; (b) any affiliate, officer, director, employee or controlling person thereof; (c) any entity owned or controlled by the Defendant; and (d) any legal representative,

heir, successor or assign of any such excluded person.

The complaint alleged that the nation-wide class consisted of approximately 20,000 persons or entities and that common questions of law and fact predominated over any questions solely affecting individual class members. These questions centered on allegedly illegal contract provisions and improper actions EchoStar took to reduce the number of its retailers, including denying them compensation they had earned and enforcing a non-competition provision. ACS asserted its ability to represent the class fairly and effectively. The complaint requested compensatory damages to ACS and the class members, an injunction against EchoStar's allegedly illegal conduct, and a declaratory judgment voiding the non-compete and attorneys' fees provisions of the "Bounty Hunter Agreement."

EchoStar requested extensions of time to answer and then filed a Motion to Dismiss or for a More Definite Statement. Shortly thereafter, EchoStar sent information packets and a new agreement, the "Distributor and Retail Non–Incentivized Agreements" (the Communication) to Retailers. As a condition for continuing their business relationship with Echostar, the Communication required each Retailer to waive any claims or causes of action Retailers had or might have against EchoStar, except for claims and causes of action it listed with EchoStar within thirty days of executing the Communication. The Communication also granted EchoStar the right to examine Retailers' books and records in connection with any claims or causes of action. Paragraph 2.7.2 of the Communication provided:

> Retailer and its Affiliates hereby acknowledge and agree that they do not, as of the date of this Agreement, have any claims or causes of action against EchoStar or any of its Affiliates for acts or omissions that may have occurred prior to the date of this Agreement and, *in consideration of Retailer being appointed as an Authorized retailer hereunder by EchoStar, Retailer and its Affiliates hereby agree to waive any and all such claims and causes of action, with the sole exception of any claims and causes for which Retailer provides written notice to EchoStar in the same form required for a Notice of Claim under Section 14.5 below (including proper signature and notary) within thirty (30) days after Retailer executes this Agreement.* EchoStar shall have the same rights with respect to requests for additional information and access to Retailer's books and records in connection with any such claims and causes of action as EchoStar has under Section 14.5 below. *Failure to strictly comply with the provisions of this Section 2.7.2 with respect to a particular claim and/or cause of action shall constitute a waiver by Retailer and its Affiliates with respect to the relevant claim and/or cause of action.*

(Emphasis added.)

In addition, paragraph 14.4.2 of the Communication required binding arbitration of all disputes arising out of "the relationship between the parties" in the event negotiation failed. EchoStar did not accompany the Communication with any notice of, or reference to, the class action complaint ACS had filed against EchoStar in the District Court.

ACS filed a Motion for Emergency Relief under C.R.C.P. 23(d) requesting the District Court to supervise EchoStar's future communications with putative class members affecting the litigation and to require the mailing of a corrective notice regarding the Communication at EchoStar's expense. ACS asserted that the Communication misled and coerced Retailers into waiving their claims and causes of action, harming the putative class members and impairing the viability of the class action, contrary to C.R.C.P. 23.

The District Court agreed with ACS. It determined that the Communication seriously impaired, or eliminated, the court's ability to "protect both the absent class and the integrity of the judicial process by monitoring the actions before it."[1] The District Court concluded that it had authority under C.R.C.P. 23(d) to supervise future communi-

---

1. In so ruling, the District Court quoted from *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1203 (1985).

cations between EchoStar and putative class members and imposed a prior review restraint on future communications:

> Accordingly, it is the order of this court that all future communications from EchoStar to the putative class members, excluding normal business communications unrelated to the matters involved in this litigation, are prohibited unless approved by prior order of this court.

The District Court also ordered ACS to prepare for its approval a proposed corrective notice regarding the Communication for mailing to all putative class members at EchoStar's expense. The proposed corrective notice-not yet sent because we assumed jurisdiction under C.A.R. 21-recites in full:

> You are a potential member of a class action lawsuit filed on your behalf and this Notice is being sent to you by Order of The Honorable Jack F. Smith, District Judge, District Court, Arapahoe County, Colorado and has been approved by the Court to advise you of your rights in connection with a law suit that has been filed in the District Court by Air Communications & Satellite, Inc. against EchoStar Satellite Corporation. (Case No. 00 CV 3130, Division 12.) If you have signed an EchoStar Non-Commissioned Retailer Agreement, an EchoStar Non-Incentivized Retailer Agreement or an EchoStar Bounty Hunter Agreement, this Notice may affect your legal rights and you should read it carefully.

> This lawsuit was filed by Air Communications on October 6, 2000, on behalf of itself and a proposed class of Retailers who signed the EchoStar Non-Commissioned Retailer Agreement, Non-Incentivized Retailer Agreement or the Bounty Hunter Agreement. The Complaint in this case alleges, as Class Claims, that EchoStar breached its contracts with its Retailers, including the implied covenant of good faith and fair dealing, tortiously interfered with the Retailers' prospective business relationships with subscribers and included illegal provisions in its standard form contracts. Plaintiff is seeking monetary damages and injunctive relief enjoining enforcement of the non-compete clause and

the attorneys fee clause in the Bounty Hunter Agreement and further breaches of EchoStar's contracts. EchoStar has denied Plaintiff's allegations. On February 20, 2001, the Court entered an Order Denying Defendant's Motion to Dismiss Plaintiff's Complaint.

On February 13, 2001, Plaintiff filed a motion for emergency relief and corrective notice to the class. In that motion, Plaintiff alleged that EchoStar had improperly communicated with class members by providing them with dealer information packets and soliciting new retailer agreements that contained language that might be understood to compromise the Class Claims of Class Members against EchoStar in this suit. Plaintiff alleged that EchoStar's actions were improper and unless corrected by the Court would interfere with the Court's ability to protect the potential Class Members.

On March 23, 2001, Judge Smith entered an Order granting Plaintiff's motion. Judge Smith's Order prohibits EchoStar from making further communications with the Potential Class Members other than normal business communications unrelated to the matters involved in this litigation unless approved by prior order of the Court. In addition, Judge Smith ordered this Notice to be sent to all potential Class Members at EchoStar's expense to inform each of you of your legal rights in connection with this lawsuit.

Please be advised that none of the prior communications from EchoStar or EchoStar's Distributors were authorized by the Court. You are hereby further advised that nothing in the unsupervised communications from EchoStar or its Distributors will compromise or adversely impact the Class Claims that are being prosecuted on your behalf in this litigation. Thus, you are entitled to determine whether you wish to enter into the new Non-Incentivized Retailer Agreement or decline to enter into the new Non-Incentivized Retailer Agreement (or any other agreement offered to you by EchoStar or EchoStar's Distributors) and your decision will not affect your right to participate in this liti-

gation in the event the Court determines that the Class Claims may be prosecuted as a class action.

(Emphasis added.)

EchoStar filed a C.A.R. 21 petition, and we issued a Rule to Show Cause to review the District Court's order. As EchoStar phrases it, the issue is:

> Whether the District Court abused its discretion in prohibiting truthful, non-misleading, pre-certification communications with EchoStar's retailers and requiring a "corrective notice" that proposes to void one term in their contracts without adjudicating its validity.

We discharge the rule in part and make it absolute in part.

## II.

We hold that the District Court did not abuse its discretion in ordering, at EchoStar's expense, the mailing of a corrective notice regarding EchoStar's Communication affecting the litigation. We hold, however, that the District Court abused its discretion in requiring, during the pre-certification period, prior review of future communications between EchoStar and Retailers who are putative class members. We direct the District Court to vacate the section of its order that imposed the prior review requirement. Because the proposed corrective notice would inform the putative class members about the prior review requirement, we direct the District Court to delete this portion of the corrective notice before its mailing.

### A.

#### Standard of Review

Class actions serve an important function in our system of civil justice, and a trial court has considerable discretion to manage them. Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties. *Gulf Oil v. Bernard,* 452 U.S. 89, 99–100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). A trial court has broad discretion to control litiga-

tion before it, and we rarely intervene under our original jurisdiction to review procedural orders, including those involving class action complaints. *See Smith v. Dist. Court,* 797 P.2d 1244, 1246 (Colo.1990). However, our original jurisdiction extends to petitions alleging that the trial court has exceeded its jurisdiction or abused its discretion and that normal appellate remedies will not suffice. *Halliburton v. County Court of Denver,* 672 P.2d 1006, 1009 (Colo.1983). Accordingly, we have sometimes exercised our original jurisdiction in class action cases. *See Mountain States Tel. & Tel. Co. v. Dist. Court,* 778 P.2d 667 (Colo.1989); *cert. denied,* 493 U.S. 983, 110 S.Ct. 519, 107 L.Ed.2d 520 (1989).

### B.

#### Pre-certification Contacts Affecting the Class Action Litigation

The propriety of a defendant's pre-certification contact with putative class members under C.R.C.P. 23(d) affecting the litigation is an issue of first impression for us. However, C.R.C.P. 23 is patterned largely on Fed.R.Civ.P. 23, *see Goebel v. Dep't of Insts.,* 764 P.2d 785 (Colo.1988), and we consider federal precedent and that of other states with a similar rule in construing the provisions of Colorado's rule. *Mountain States Tel. & Tel. Co.,* 778 P.2d at 671; *see also Harding Glass Co. v. Jones,* 640 P.2d 1123, 1125 n. 3 (Colo.1982).

C.R.C.P. 23(d) provides:

**Orders in Conduct of Actions.** In the conduct of actions to which this Rule applies, the court may make appropriate orders:

(1) Determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument;

(2) Requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, the notice be given in such a manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to

intervene and present claims or defenses, or otherwise to come into the action;

(3) Imposing conditions on the representative parties or on intervenors;

(4) Requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly;

(5) Dealing with similar procedural matters. The orders may be combined with an order under Rule 16, and may be altered or amended as may be desirable from time to time.

C.R.C.P. 23(d).

■ Thus, C.R.C.P. 23(d) authorizes the trial court to determine the course of the proceeding, C.R.C.P. 23(d)(1); and it can require notices for the protection of the members of the class and the fair conduct of the action. C.R.C.P. 23(d)(2). The court's authority under Rule 23(d) extends to ordering one or more of the parties to perform the tasks necessary to notify members of the class or putative class. *Mountain States Tel. & Tel. Co.*, 778 P.2d at 672. A commentator has described the role of C.R.C.P. 23(d)(2) as follows:

Rule 23(d)(2) allows the court to protect members of the class by giving notice, in such a manner as the court may direct, to some or all members of the class at any stage in the action. This provision applies to those actions in which notice is not mandated under Rule 23(c)(2), although it permits additional notification in those actions as well. This section of the rule also permits the court to ascertain whether the class members consider the representation to be fair and adequate and permits class members to intervene under circumstances determined by the court.

Sheila K. Hyatt and Stephen A. Hess, *Colorado Civil Rules Annotated* 327 (1998).

■ Trial courts generally have extensive authority to limit communications between defendants and class members after certification of the class. The court's author-

ity to limit communications between defendants and putative class members before certification is narrower. For example, defendants do not violate Rule 23(e) by negotiating settlements with putative members of a class, but the trial court must approve settlements or dismissal of the action.[2] *See, e.g., Christensen v. Kiewit–Murdock Inv. Corp.*, 815 F.2d 206, 213 (2d Cir.1987); *Jenifer v. Delaware Solid Waste Auth.*, No. 98–270, 1999 WL 117762, *2, 1999 U.S. Dist. Lexis 2542, at *7 (D.Del.1999). However, the trial court has authority to correct "communications with class members prior to certification [that] deceive or mislead class members." *Gulf Oil v. Bernard*, 452 U.S. 89, 101, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981); *see also Jenifer*, 1999 WL 117762, *3, 1999 U.S. Dist. Lexis 2542, at *14–15. A treatise on class actions recognizes that attempts to threaten putative class members with legal, economic, or political sanctions for joining a class constitute an abuse under the class action rule that a court can remedy. Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 15–14, at 15–42 (3d ed.1992). Another commentator recommends that defendants be barred from obtaining releases from members of a putative class without court approval prior to a decision determining class certification. Benjamin S. Duval, Jr., *The Class Action as an Antitrust Enforcement Device: The Chicago Experience (II)*, 1976 ABA Res. J. 1273, 1353–54. While allowing defendants to negotiate settlements with individual class members, courts have imposed restrictions on the negotiation process designed to insure that the negotiations were free from deception or coercion. *Id.* at 1354. The *Manual for Complex Litigation* states that defendants may not give false or misleading information or attempt to influence class members in making their decision whether to remain in the class. *Manual for Complex Litigation* (Third) § 30.24 (1995).

Since the Supreme Court's decision in *Gulf Oil*, a number of courts have articulated the types of communications a defendant made but a court can correct. Such rulings center on coercive or misleading pre-certification

---

**2.** C.R.C.P. 23(e) provides that: "a class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." C.R.C.P. 23(e).

communications that may substantially reduce member participation in the class action or harm the interests of the putative class action members. *Fraley v. Williams Ford Tractor*, 339 Ark. 322, 5 S.W.3d 423, 436 (1999)(holding that attempts by class opponents to discourage participation in class actions under circumstances that indicate a likelihood of coercion or a serious potential for harm to the interests of the class action violate Rule 23); *Hampton Hardware, Inc. v. Cotter & Co.*, 156 F.R.D. 630, 633 (N.D.Tex.1994)(holding that it is impermissible to attempt to reduce the putative class members' participation in the lawsuit through coercive tactics); *Carnegie v. H & R Block*, 180 Misc.2d 67, 687 N.Y.S.2d 528, 531 (N.Y.Sup.Ct.1999)(holding that the test for whether a party has had impermissible contact with putative members of the plaintiff class is whether the contact is coercive, misleading, or an attempt to affect a class member's decision to participate in the litigation); *Burrell v. Crown Cent. Petroleum*, 176 F.R.D. 239, 243 (E.D.Tex.1997) (holding that where a class action has been filed, but a certification decision has not yet been entered, a court may issue a limitation on ex parte contact under Rule 23 if it is clear the defendant is attempting to engage in conduct which would undermine the purposes of the rule).

Discussing franchise relationships, as an example, *Newberg on Class Actions* focuses on the numerosity consideration in class actions, C.R.C.P. 23(a)(1), and the court's authority as a neutral decisionmaker to supervise the litigation and protect the interests of the putative class members in the class action during the pre-certification period:

> The solicitation of exclusions from a pending class action by a defendant before the court has determined that the case may proceed as a class action constitutes a serious challenge to the authority of the court to have some control over communications with class members. Unauthorized communications in a franchise class action, for example, may result in settlements by so many franchises as to eliminate satisfaction of the numerosity requirement of Rule 23(a)(1), thus stripping the action of its representative status and leaving the plain-

tiff free only to prosecute her or his own individual claim. Courts are concerned that such communications may prevent class members from making informed decisions about exclusion. It is the responsibility of the Court as a neutral arbiter, and of the attorneys in their adversary capacity, to insure this type of free and unfettered decision to opt out of the class or not.

Newberg & Conte, *supra*, § 15.19 at 15–52 (citations and internal quotation marks omitted).

 We agree with other courts construing class action rules. We determine that Colorado trial courts have authority to protect putative class members against abusive practices that harm their interests in the action and compromise the viability of maintaining the class action while the court proceeds through the necessary and appropriate steps for deciding whether to certify the class. Abusive practices include coercive or deceptive tactics inducing or causing putative class members to abandon their claims or causes of action addressed by the class action complaint. *See Jenifer*, 1999 WL 117762, *2, 1999 U.S. Dist. Lexis 2542, at *9; *Burrell v. Crown Cent. Petroleum, Inc.*, 176 F.R.D. 239, 243 (E.D.Tex.1997) (citing *Hampton Hardware, Inc. v. Cotter & Co.*, 156 F.R.D. 630, 632 (N.D.Tex.1994)).

We now proceed to examine the District Court's pre-certification order in this case.

### C.

#### The District Court's Pre–Certification Order

##### 1. Corrective Notice

 The District Court's pre-certification order required the mailing of a corrective notice regarding the Communication and prohibited future communications affecting the litigation without court approval. We hold that the District Court did not err in requiring a corrective notice in regard to the Communication.

EchoStar conditioned any further Retailer relationship on waiver of claims and causes of actions, except for a narrow and onerous exception for claims and causes of action

Retailer listed in a notarized writing to EchoStar within thirty days of signing the new agreement. The exception to the waiver provision required Retailers to detail the date, time, and nature of the occurrence; the total amount claimed by the Retailer; the basis for the amount claimed; and copies of all other relevant information in their possession. In addition, Retailers had to provide EchoStar with access to their books, records, and other information that EchoStar might request. Failure to accomplish this notification within thirty days after the Retailer executed the new agreement would result in waiver of all claims and causes of action. Much of the required information needed to comply with this obligation likely resides in EchoStar's possession and is not obtainable by Retailers within thirty days.

By the Communication, EchoStar also required binding arbitration of disputes, superceding the court litigation vehicle previously available to Retailers under their agreements. This provision can be read to include the claims and causes of action ACS brought on Retailers' behalf and could preclude each Retailer from remaining in the class, if certified.

In *Carnegie v. H&R Block*, the defendant added a provision in its tax services contract that required the arbitration of claims after the initiation of a class action and before class certification. *Carnegie*, 687 N.Y.S.2d at 530. Plaintiff argued that the purpose of the arbitration clause was to bypass court supervision of the class action certification and notice procedures and destroy class members' opportunity to participate in the class action. *See id.* at 530. The court agreed with Plaintiff and held that the arbitration clause would not preclude class member participation in the litigation, unless the mem-

bers opted out after proper notice of the class action. *See id.* at 532.

■ EchoStar's Communication did not advise Retailers that the pending class action complaint might redress the claims and causes of action EchoStar was seeking to have them waive. If signed, the new agreement would cause putative class members to forfeit those claims and causes of action. Colorado law does not favor forfeiture provisions. *Cooley v. Big Horn Harvestore Sys., Inc.*, 813 P.2d 736, 742 (Colo.1991); *Montgomery Ward & Co. v. Reich*, 131 Colo. 407, 411, 282 P.2d 1091, 1093 (1955). The fact that EchoStar and putative class members were involved in an on-going business relationship underscored the coercive effect of EchoStar's Communication. *See Hampton Hardware*, 156 F.R.D. at 633; *see also Kleiner v. First Natl. Bank of Atlanta*, 751 F.2d 1193, 1201 (11th Cir.1985) (putative class members were bank customers of the defendant); *Jenifer*, 1999 WL 117762, *3, 1999 U.S. Dist. Lexis 2542 at *14–15. In regard to Retailers who were aware of the class-action complaint, affidavits the District Court had before it in this case attested to the intense pressure EchoStar had exerted through the Communication for abandonment of claims and causes of action the class action complaint alleged, thereby affecting the numerosity of class members, a criteria for certification under C.R.C.P. 23(a)(1).[3]

The evidence demonstrates that EchoStar's Communication was misleading and coercive. It misled uninformed Retailers into abandoning the claims and causes of action ACS had brought on their behalf. It coerced Retailers who were aware of the class-action complaint to abandon the claims and causes of action therein, in order to maintain the right to sell EchoStar products and services.

---

**3.** The Affidavit of Ronald L. Griffin asserts that: This contract provision attempted to force me to waive my claims especially since I could not comply with all of the date, time, place and other informational requirements. A great deal of this information is held by EchoStar.... On January 30, 2001, I signed a new version of the Agreement without any changes, knowing that my affidavit filed in the U.S. District Court for the District of Colorado on January 23, 2001, provided notice to EchoStar and its affiliates that I wanted to reserve all

claims and causes of action against them.... On February 12, 2001, I received a letter ... informing me that EchoStar did not accept my signed agreement.... The result of this is that I cannot get Dish products from Dow Electronics, in effect, terminating my relationship with the local distributor. Meanwhile, my status with EchoStar is unknown, and they will not respond to my attempts to contact them, even though I have a current contract with EchoStar that is still in effect.

This coerced or induced surrender of claims and causes of action cannot be enforced in such circumstances. Accordingly, we determine that the District Court properly found that: (1) provisions of EchoStar's Communication harmed the putative class members and impaired the court's ability to protect them; and (2) a corrective notice should issue at EchoStar's expense advising the complaint's putative class members of the filing of the class action complaint and advising them that the Communication would not prevent their participation in the class action in the event the District Court certified it.

### 2. Restraint on Future Communications During the Pre–Certification Period

 The trial court's role in restraining future communication, in contrast to correcting a past coercive or misleading communication, is more difficult. The trial court has authority on a proper showing to restrain future pre-certification communications by defendant, but the trial court must balance both the company's and putative class members' interests and make findings of fact that justify a restriction. The restriction must appropriately address the circumstances of envisioned future abuse. Because the District Court did not engage in the required balancing of interests or make the requisite findings of fact, we determine that it abused its discretion in subjecting future pre-certification communication between EchoStar and its Retailers to prior court review.

 The United States Supreme Court has held that "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil v. Bernard,* 452 U.S. 89, 101, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). Before restricting future communication, the trial court must find that the evidentiary showing provides a satisfactory basis for relief under Rule 23, giving explicit consideration to the narrowest possible relief that would protect the respective parties. *Id.* at 102, 101 S.Ct. 2193 (citing *Coles v. Marsh,* 560 F.2d 186, 189 (3d Cir.1977)).

 The trial court must identify how the defendant's pre-certification contact with putative class members could interfere with the purposes and enforcement of Rule 23. *Gulf Oil,* 452 U.S. at 101–02, 101 S.Ct. 2193; *see also Jenifer,* 1999 WL 117762, *3, 1999 U.S. Dist. Lexis at *12–15; *Fraley,* 5 S.W.3d at 433–35. The plaintiffs need not demonstrate actual harm; the likelihood of serious abuses occurring can justify imposing a restriction. *Jenifer,* 1999 WL 117762, *3, 1999 U.S. Dist. Lexis at *11–12. A possibility of future abuse or coercion is not enough. *Gulf Oil,* 452 U.S. at 104, 101 S.Ct. 2193. On the other hand, if the facts show that the relationship between the parties is inherently coercive, the trial court may determine that a particularized showing of abuse is not necessary. *See Burrell,* 176 F.R.D. at 244.

In *Jenifer,* the court determined that it had the authority to limit future pre-certification communications between defendants and putative class members. The *Jenifer* court stated the policy reasons underlying this authority: "The effect of a defendant attempting to influence potential plaintiffs not to join a potential class action is just as damaging to the purposes of Rule 23 as a defendant that influences members of an already certified class to opt out." *Jenifer,* 1999 WL 117762, *2, 1999 U.S. Dist. Lexis at *9.

 However, on consideration of facts very similar to this case, the *Jenifer* court also held that some pre-certification communication with putative class members is appropriate. For example, it is well established that defendants may seek settlement of individual claims with potential class members, *id.* at *2, at *9–10, and engage in routine commercial transactions involving putative class members. *See In re Winchell's Donut Houses L.P.,* No. 9478, 1988 WL 135503, at *1–2 (Del.Ch. Dec.12, 1988).

 The Arkansas Supreme Court has stated that a trial court may restrict or prohibit future communication that attempts to "substantially reduce the member participation in the class action, or which otherwise indicate[s] a likelihood of coercion or a serious potential for harm to the interests of the class action." *Fraley v. Williams Ford*

*Tractor & Equip. Co.,* 339 Ark. 322, 5 S.W.3d 423, 435 (1999). Several factors we now articulate as Colorado law guide the trial court in considering the formulation of restrictions on future communication by a defendant to putative class members, including: (1) the severity and likelihood of perceived harm; (2) the precision with which the order is drawn; (3) the availability of a less onerous alternative; and (4) the duration of the order. *Fraley,* 5 S.W.3d at 433–34 (applying the principles of *Gulf Oil*).

Here, the District Court's order restricting EchoStar's future communication with Retailers in the putative class lacked analysis. The court simply precluded "further communication by EchoStar down this path," referring to the Communication it ordered to be corrected. The District Court did not adequately consider the severity and likelihood of future harm to putative class members versus the impact of a restraint on the ability of EchoStar and Retailers to do business together. No findings of fact or articulated balancing discussion accompanied the future restraint. By subjecting future pre-certification communication to prior review, the District Court did not fashion the "narrowest possible relief that would protect the respective parties." *Gulf Oil,* 452 U.S. at 101, 101 S.Ct. 2193. For example, the District Court's order can be read to preclude pre-certification settlement contacts, contravening established case law. *See Christensen v. Kiewit–Murdock Inv. Corp.,* 815 F.2d 206, 213 (2d Cir.1987); *Jenifer,* 1999 WL 117762, *2, 1999 U.S. Dist. Lexis 2542, *7.

In this case, the corrective notice regarding EchoStar's Communication presented a less onerous alternative, but the District Court did not limit its order to that remedy. We adopt the reasoning in *Carnegie* in this regard. There, the plaintiff requested the court to restrain the defendant from benefiting from the offending contract in any respect. However, the trial court determined that a form of less restrictive corrective action was appropriate. *Carnegie,* 687

N.Y.S.2d at 532. It ruled that the new arbitration requirement could not be enforced, but refused to restrain the defendant from any use of the contract that would otherwise interfere with the defendant's business operations. *Id.*

The District Court correctly ruled that the Communication and the signing of the new agreement could not be enforced and would have no effect on the participation of putative class members and their right to enjoy remedies in the class action, should the court certify it and Retailers elect not to opt out. This ruling and an appropriate corrective notice issued in this case will effectively remedy EchoStar's coercive and misleading Communication. On the other hand, applying the *Gulf Oil* and *Fraley* factors, which we adopt, the court's constraint on future EchoStar communication during the pre-certification period cannot stand.[4]

We therefore conclude that the District Court's restriction on future communication during the pre-certification period constituted an abuse of discretion. In so determining, we emphasize that the District Court should promptly proceed on remand to resolve the class action certification question, following any necessary discovery on the question. *See Levine v. Empire Sav. & Loan Ass'n,* 197 Colo. 293, 297, 592 P.2d 410, 413 (1979).

When finalizing the corrective notice, the District Court may correct any additional communication that EchoStar may have made to putative class members during the pendency of our original proceeding, consistent with this opinion. However, the District Court must delete the reference in the proposed corrective notice to a restraint on future communications. The District Court may add provisions to the notice it deems appropriate in light of this opinion. The corrective notice may issue only to the putative class members described in the complaint.[5]

---

4. The District Court retains discretion to take additional corrective action in the event of further abuses. It may also employ evidence of additional threats or actual abuses in considering a restriction on future pre-certification or post-certification communications. Our opinion here deals with the pre-certification period. Post-certification rulings await the District Court's class action determinations.

### III.

Accordingly, we discharge the rule in part and make it absolute in part. We remand this case to the District Court with directions to send a corrective notice regarding EchoStar's Communication to the putative class members and to vacate that portion of its order subjecting future communications during the pre-certification period to prior court review, consistent with this opinion.

---

5. We uphold the District Court's order that EchoStar provide counsel for ACS with the names, addresses and any other information required to mail the corrective notice to the putative class members.