*758 OPINION OF THE COURT
Alice Schlesinger, J.
The plaintiffs here are a husband and wife who had two relationships with the defendant Smith Barney. On April 10, 1984 Martin Hacker was hired as a stockbroker by Smith Barney, thereby creating an employment relationship. On April 20, 1984 Martin and Ellen Hacker signed an agreement with Smith Barney opening a joint security account, thereby creating a customer’s relationship with them.
As part of Martin Hacker’s arrangement with Smith Barney, Hacker executed a promissory note for $70,000 at the commencement of his employment. This loan was a bonus whereby one third of the principal would be forgiven on each anniversary date of the note. In the event of termination of his employment, Hacker would be expected to pay back whatever was left.
When Mr. Hacker was hired, he also executed a uniform application for securities industry registration. That form contained a clause in which Hacker agreed to "arbitrate any dispute, claim or controversy that may arise between me and my firm * * * that is required to be arbitrated under the rules, constitutions, or bylaws of the organizations with which” he registered.
Later in April of 1984, Hacker did become registered with the New York Stock Exchange as a representative. The New York Stock Exchange rule 347 provides for arbitration of all controversies between registered representatives and member firms which relate to employment or termination of employment.
On June 14, 1985, Smith Barney fired Martin Hacker. Four days later they sent him a letter demanding back the remainder of the loan in the amount of $46,666.67. Soon thereafter, Mr. and Mrs. Hacker discovered that the $17,000 which they had in their joint customer’s account had been frozen and was unavailable to them.
The Hackers then brought this suit against Smith Barney alleging two causes of action: (1) for conversion of the joint account funds in the sum of $17,000; and (2) for damages for Martin Hacker’s wrongful discharge in the sum of $25,000. The defendant then moved before this court pursuant to CPLR 7503 (a) to compel arbitration of these claims and to stay the action pending this arbitration.
Smith Barney based its motion on the contracts involved in *759 the two relationships. With regard to Hacker’s employment, defendant cites the before mentioned clauses in his contract and in the New York Stock Exchange rule. With regard to Mr. and Mrs. Hacker’s joint customer’s account, defendant points to an agreement signed by the plaintiffs which "seems” to contain a clause authorizing arbitration of any controversy arising out of the account.
For the reasons discussed below, I am severing the claims and granting defendant’s motion only as to the second cause of action, the wrongful discharge claim, and am denying it with regard to the first cause involving the alleged conversion of Martin and Ellen Hacker’s personal account for $17,000.
Martin did have an employment relationship whereby he knowingly agreed to accept the rules of the New York Stock Exchange to arbitrate the termination of his employment. In a case very similar to this one, Firstenberg v Smith Barney, Harris Upham & Co. (slip opn, Jan. 28, 1986), Justice Arthur Blyn found that the New York Stock Exchange rules on arbitration were incorporated into a broker’s employment agreement and were binding. Since the matters in controversy there flowed from the employment relationship between the parties, they had to be determined by arbitration under the New York Stock Exchange rules. This court agrees with the reasoning and conclusion recited above and finds that they apply to plaintiff’s second cause of action here.
However, such is not the case in the alleged conversion cause of action filed by Martin and Ellen Hacker. The demand for arbitration by the corporation here is based on an agreement drawn up by them which is virtually impossible to read. A copy of the agreement containing the mandatory arbitration clause was included by both parties and was spelled out in the body of the briefs. The court attempted to machine enlarge the contract, and even then the words were still much too small and blurred, as they were in the original. It is possible that the defendant made it a practice to supply magnifying glasses with this agreement to their customers. If so, that might have made it possible to read and understand the agreement. However, no such claim is made here.
The issue in a case involving a motion to compel arbitration is a limited one for the court to decide, since both State and Federal statutes express a policy favoring the resolution of disputes through arbitration, if that is called for in the contract. (Matter of Exercycle Corp. v Maratta, 9 NY2d 329 *760 [1961].) However, even though the power of the court is limited in this area, it is not extinct. As the Court of Appeals stated in Matter of Zimmerman v Cohen (236 NY 15, 19 [1923]): "The Arbitration Law was passed to provide a means for enforcing an agreement to arbitrate; it did not otherwise change the law of contracts which is as applicable to such an agreement as to other terms and conditions.”
Thus, there is still a judicial function to peruse the contract and determine in the first instance whether it is a valid and enforceable one. If it is not, as for example if it has been induced by fraud (Matter of Ermolieff v Liss, 140 Misc 214 [Sup Ct, NY County 1931]), or if it constitutes a usurious contract (Durst v Abrash, 22 AD2d 39 [1st Dept 1964]), or if it is unconscionable (Pittsfield Weaving Co. v Grove Textiles, 121 NH 344, 430 A2d 638 [1981]), or if it illegally limits the liability of one of the parties (Matter of AAACon Auto Transp. v State Farm Mut. Auto. Ins. Co., 537 F2d 648 [2d Cir 1976]), then it is certainly the function of the court to declare the agreement unenforceable as to some or all of its terms.
The print in the agreement in the instant case is clearly violative of the size and legibility requirements established by CPLR 4544. That section provides that "[t]he portion of any printed contract or agreement involving a consumer transaction * * * where the print is not clear and legible or is less than eight points in depth or five and one-half points in depth for upper case type may not be received in evidence in any trial, hearing or proceeding on behalf of the party who printed or prepared such contract or agreement, or who caused said agreement or contract to be printed or prepared.”
The print used in this agreement prepared and printed by defendant is absolutely illegible to the naked eye, and its lower case print is six points or less.*
CPLR 4544 is to be applied in consumer transactions, which includes any "transaction wherein * * * the money, property, or service which is the subject of the transaction is primarily for personal, family or household purposes.” (CPLR 105 [f].) In researching "consumer transactions,” it is easier to find cases that define things that are not for personal, family or household purposes, such as law books for an attorney (Bender & Co. v Shore, 86 AD2d 708 [3d Dept 1982]). However, Federal *761 Truth and Lending Act §§ 102-181 (15 USC §§ 1601-1667) which contain language similar to the New York definition of a consumer transaction, indicate that the court must examine the transaction as a whole and the entire surrounding circumstances. (Tower v Moss, 625 F2d 1161 [5th Cir 1980].)
I find here that this was a consumer transaction, as the apparent purpose of the agreement was the investment of the Hacker family’s personal funds to increase their assets and provide them with security and a comfortable life-style. There is certainly no indication that this agreement had anything to do with the husband’s employment, except that it may have been the convenient and politic thing to do.
When an individual waives an important right, he must do so knowingly and voluntarily. By signing a contract which contains clauses mandating arbitration, a party waives the right to have a court litigate the claims. This waiver leads to the forfeiture of important rights, such as having full and fair discovery, a full and complete record at trial, and a trial by jury of one’s peers. This court will only accept such a waiver if it is satisfied that the agreement encompassing it displays that the party against whom it is asserted knowingly and intelligently relinquished this right.
The defendant argues that the Federal Arbitration Act requires this court to enforce the arbitration "agreement,” citing Southland Corp. v Keating (465 US 1 [1984]), Dean Witter Reynolds v Byrd (470 US 213 [1985]) and Moses H. Cone Hosp. v Mercury Constr. Corp. (460 US 1 [1983]). This court has read these cases, as well as Robinson v Bache & Co. (227 F Supp 456 [SDNY 1964]) and others. The cases involve suits by customers against brokerage houses as a form of interstate commerce, and, in some cases, the Securities Exchange Act. However, each of these cases is distinguishable on its facts; and, most significantly, these cases only seek to compel arbitration if the underlying agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.” (Federal Arbitration Act, 9 USC § 2.)
I am of the opinion that the manner in which this consumer agreement was printed by the defendant was inequitable by common-law standards and violative of New York law (CPLR 4544). Therefore, I will not enforce the arbitration clause in the agreement, and thus deny defendant’s motion as it relates to the first cause of action.

 It is important to note here that, although plaintiffs did not argue the CPLR 4544 point in their written opposition papers, their attorney did include in his oral argument the issue that the illegible contract print lead to plaintiff’s failure to understand and effectively consent to the agreement.