*68 OPINION OF THE COURT
Louise Gruner Gans, J.
Plaintiff Lynn Carnegie moves for an order pursuant to CPLR 907 restraining H&R Block, Inc., H&R Block Tax Services, Inc., H&R Block Eastern Tax Services, Inc., and Block Financial Corporation (the Block defendants) from communicating with class members and interfering with class action certification and notice procedure, through the inclusion, beginning in 1997, of an arbitration clause in the Refund Anticipation Loan (RAL) application form which Block submits for signature to customers using its tax preparation services.[1]
A detailed discussion of the background of this action was provided in this court’s October 15, 1998 decision. For purposes of this motion, it suffices to note that the gravamen of the action is a claim that Block “lures” customers into its offices with promises of a “Rapid Refund” obtainable through electronic filing of tax returns and then manipulates them, inter alia, by using an incomprehensible Refund Anticipation Loan or RAL form, to take out loans from Beneficial National Bank (Beneficial) and pay finance charges to Beneficial above and beyond Block’s fees for income tax preparation services or for electronic filing of tax returns; Beneficial’s finance charges are then in part “kicked-back” to Block. The court certified a class as to plaintiffs claim for violation of General Business Law §349.
Carnegie’s motion involves a revision of the loan application or RAL form which the Block defendants have their clients execute in connection with their provision of income tax preparation and electronic filing services. In 1997, after this action was commenced, but before class certification, the loan application form was revised to include an arbitration clause which, inter alia, bars Block customers who execute the form from seeking redress through the institution of a class action without Block’s consent, including disputes arising from RALs executed in prior years.
The arbitration clause for both 1997 and 1998, with insignificant variations, states that the parties to a RAL application or *69 loan agreement (de facto Block customers) will submit their disputes to arbitration and are barred from proceeding by class action except by mutual consent. In the arbitration clause, Electronic Return Originators (EROs) such as Block are expressly designated as third-party beneficiaries of the arbitration clause and parties to it. Moreover, the arbitration clause is expressly made applicable to disputes concerning prior RAL applications and agreements involving the same parties. Indeed, by letter dated January 7, 1998 to Carnegie’s counsel, counsel for defendants, by attorney Ellingsworth, insisted “that the claims of that portion of the putative class who were recipients of RALs in 1997 * * * shall be arbitrated individually * * * and cannot proceed in this putative class action.” On this motion, defendants take the same position with respect to customers who signed the 1998 RALs.
Carnegie has asked this court to enjoin Block from communicating with members of the putative and now certified class via the RAL application containing the arbitration clause or from relying on the arbitration clause to prevent class members from participating in this action. As the putative and now certified class includes taxpayers who used Block’s services in 1997 and 1998, as well as repeat customers who used Block’s services both before and during 1997 and/or 1998, Carnegie argues that the insertion of the clause into the RAL form constitutes an impermissible communication by Block with potential and actual class members, which, if found enforceable, would significantly reduce the size of the class. Further, Carnegie claims that the purpose of the revision is to destroy class members’ entitlement to participate in the class action and to bypass court supervision of class action certification and notice procedure.
Block’s argument that its use of the RAL application[2] is an act by Beneficial only and not by Block must be rejected. While there is evidence in the record that Block participates in the preparation of the RAL application,[3] the literal authorship of the RAL application is not dispositive here. The RAL applica *70 tion form on its face identifies it as part of a RAL program by Beneficial “in association with H & R Block” and contains repeated other references to H&R Block involvement. Moreover, it is Block which presents the form to putative class members for signature and by its terms is a beneficiary of and party entitled to enforce the arbitration clause included in the form. Under these circumstances, the content of the RAL application form, and particularly the arbitration clause, is attributable to Block as well as to Beneficial.
“Class actions serve an important function in our system of civil justice. They present, however, opportunities for abuse as well as problems for courts and counsel in the management of cases. Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.” (Gulf Oil Co. v Bernard, 452 US 89, 99-100 [1981], supra.)[4] Pursuant to this mandate, where communication by defendants to class members was found to constitute impermissible interference with the conduct of class litigation and/or to violate DR 7-104 (A) (22 NYCRR 1200.35 [a]), Federal courts have acted to restrain the abuse. (Kleiner v First Natl. Bank, 751 F2d 1193, 1203 [11th Cir 1985] [“Unsupervised, unilateral communications with the plaintiff class” by telephone urging them to opt-out of class was held to “sabotage the goal of informed consent”]; Erhardt v Prudential Group, 629 F2d 843 [2d Cir 1980]; Hampton Hardware v Cotter & Co., 156 FRD 630, 634 [where defendant sent them letters discussing lawsuit and discouraging participation, potential class members required protection “from making decisions based upon one-sided information from an interested party”]; In re School Asbestos Litig., 842 F2d 671, 681-683 [3d Cir 1988]; Haffer v Temple Univ., 115 FRD 506 [ED Pa 1987]; In re Federal Skywalk Cases, 97 FRD 370, 377 [WD Mo 1983] [defendants’ use of mass media to solicit contact from members of Federal class without notifying their counsel in order to settle State class action was sanctionable as “deliberate attempt to evade * * * Court’s supervisory authority” and “a violation of Disciplinary Rule 7-104”].)
*71 The test for whether a party, with or without aid of its counsel, has had impermissible contact with potential members of the plaintiff class, is whether the contact is coercive, misleading, or an attempt to affect a class member’s decision to participate in the litigation. (Hampton Hardware v Cotter & Co., supra; Kleiner v First Natl. Bank, supra; Burrell v Crown Cent. Petroleum, 176 FRD 239 [ED Tex 1997].) “[A] defendant may not, in its communications with class members prior to certification, deceive or mislead class members.” (In re Winchell's Donut Houses Sec. Litig., 1988 WL 135503, 1 [Del Ch, Dec. 12, 1988, Allen, C.].) It is not necessary to find actual harm before corrective action is ordered. (In re School Asbestos Litig., supra, 842 F2d, at 683; Hampton Hardware v Cotter & Co., 156 FRD, at 633.)[5]
The twin purposes of the class action device are to facilitate the bringing of suits based on small claims in order to deter business activities harmful to a large number of individuals and to afford such individuals a “quasi-constitutional right” to “participate meaningfully in the legal process — which they otherwise would not have.” (Friar v Vanguard Holding Corp., supra, 78 AD2d, at 94-95.) As under Federal Rules of Civil Procedure rule 23, the Supreme Court’s authority to control the conduct of. class action litigation pursuant to CPLR 907 necessarily flows from the court’s obligation to ensure that decisions as to participation by potential class members are freely made after appropriate notice. “When the court finds that the class action has been abused to the potential prejudice of class members, the court has full power to take appropriate remedial action to avoid or minimize any prejudice to the class.” (3 Newberg, Class Actions § 15.02, at 15-6 [3d ed 1992].)
The court holds that it has authority to control precertification contact between defendants, their counsel and putative *72 class members pursuant to CPLR 907.[6] “During the time between the institution of a class action and the close of the opt-out period” “[i]t is the responsibility of the Court as a neutral arbiter * * * to insure” that the “class members’ decision to participate or to withdraw be made on the basis of independent analysis of its own self-interest”. (Impervious Paint Indus. v Ashland Oil, 508 F Supp 720, 722-723 [WD Ky], appeal dismissed 659 F2d 1081 [6th Cir 1981].) In Hampton Hardware (supra), the court placed a limit on ex parte communications with potential class members before the class was certified. “[T]he effect of a defendant attempting to influence potential plaintiffs not to join an embryonic class action would be just as damaging to the purposes of Rule 23 as a defendant that influences members of an already-certified class to opt out.” (Burrell v Crown Cent. Petroleum, 176 FRD 239, 243 [ED Tex 1997], supra.)
Accordingly, the court concludes that the enforceability of the arbitration clause in the revised RAL form must be conditioned on steps to protect the fairness of the class action process in this case. Here, those who signed the RAL application containing the arbitration clause were completely unaware of this litigation and that by signing the RAL form, they were waiving their right to participate in this class action. For Block to require its customers to sign a form stating, inter alia, that “[N]o class actions are permitted without the consent of the parties” and that their “ERO”, meaning Block, is “a party to this arbitration provision” without disclosing either the pendency of this action (cf., Nesenoff v Muten, 67 FRD 500 [ED NY 1974]), or that Block has already refused its consent to class certification, is patently deceptive.
The court is well aware of New York’s general policy in favor of arbitration (Matter of Salvano v Merrill Lynch, Pierce, Fenner & Smith, 85 NY2d 173 [1995]). However, the cases construing arbitration clauses have consistently involved predispute agreements. (See, Brower v Gateway 2000, 246 AD2d 246 [1st Dept 1998].)
*73 Moreover, general support for arbitration does not extinguish putative and actual class members’ right to be informed before being required to waive their right to participate in this class action in favor of arbitration. (Matter of Marlene Indus. Corp. [Carnac Textiles], 45 NY2d 327 [1978]; Computer Assocs. Intl. v Com-Tech Assocs., 239 AD2d 379 [2d Dept 1997], lv denied 91 NY2d 801 [1997]; Hacker v Smith Barney, Harris Upham & Co., 131 Misc 2d 757 [Civ Ct, NY County 1986], affd 136 Misc 2d 169 [App Term, 1st Dept 1987].)
The court, however, does agree with Block that Carnegie’s request to restrain Block from all use of the RAL application form containing the arbitration clause is an extreme remedy which would effectively shut down Block’s RAL program and would be an impermissible interference with Block’s normal business operations. (Gulf Oil Co. v Bernard, 452 US 89, 99-100 [1981], supra [order limiting communication with potential plaintiffs should be carefully drawn to limit speech as little as possible]; Kleiner v First Natl. Bank, 751 F2d 1193, 1206-1207 [1985], supra [upholding order because it does not impinge on bank’s ability to speak with customers about routine business matters]; In re Winchell’s Donut Houses Sec. Litig., 1988 WL 135503, 1 [Del Ch, Dec. 12, 1988, Allen, C.], supra [“(p)articularly where the class is comprised of persons with whom the defendant has an ongoing commercial relationship, it would seem distinctly ill-advised to attempt to require the defendant to deal with what may be an important aspect of a commercial relationship only through the channel of a self-appointed class action plaintiff’].)
As noted above, some form of less restrictive corrective action is appropriate. (CPLR 907.) Confusion is likely once class members are notified about the class as required by CPLR 904. (Phillips Petroleum Co. v Shutts, 472 US 797 [1985] [notice to all plaintiffs is required where damages are sought].) Some potential plaintiffs may wish to participate in this class action, while others may prefer the arbitration option or wish not to participate at all. They must be given the necessary information and opportunity to decide.
The court determines that the arbitration clause in the 1997 and 1998 RAL forms shall not preclude class members’ participation in the litigation of this General Business Law § 349 claim unless those class members, after notice concerning the pendency of this action and choice as to arbitration, opt-out of the class. This is a reasonable form of correction which does not impinge on Block’s day-to-day business or right *74 to engage in commercial speech. Such corrective action is in no way inconsistent with policies favoring arbitration (Matter of Salvano v Merrill Lynch, Pierce, Fenner & Smith, 85 NY2d 173 [1995], supra) based on appropriate informed consent.
Accordingly, the court will entertain proposals by the parties as to the form and distribution of notice to all class members pursuant to CPLR 904. As to plaintiffs who signed or will be asked to sign RAL forms containing arbitration clauses, a separate form of notice or additional notice will.be required to advise them of their right to choose between participation in the class action, individual arbitration, or neither. Block will be directed to pay for the costs of corrective notice to these class members only. (Erhardt v Prudential Group, 629 F2d 843, 845, supra.)
Accordingly, it is ordered that Carnegie’s motion for a preliminary injunction enjoining Block’s submission of RAL forms with an arbitration clause to its customers is denied; and it is further ordered that Carnegie’s motion pursuant to CPLR 907 for an order limiting the applicability of the arbitration clause to this action is granted; and it is ordered that the parties exchange and submit to the court, within 20 days of service of this order with notice of entry, proposed notices of this class action to members of the class, as well as corrective notices concerning the arbitration clause.

. The term “communication” as used here is a shorthand reference to contacts between opposing counsel and putative or actual class members concerning this litigation, which may constitute impermissible interference with the court’s supervision of class litigation and/or be violative of Code of Professional Responsibility DR 7-104 (A) (22 NYCRR 1200.35 [a]). (See, Gulf Oil Co. v Bernard, 452 US 89 [1981].)

. In light of the fact that Carnegie has asked the court to stop Block from submitting the RAL application with the arbitration clause to its clients, consideration of the enforceability of the arbitration clause is hardly premature. Neither party has requested an evidentiary hearing. The insertion of the arbitration clause into the RAL form in 1997 and 1998 is not disputed by Block.

. In the course of discovery hitherto, authorized by Justice Lewis Friedman, Block witness Edward Feinstein testified that Block’s legal department each year reviews the proposed RAL application, and documents produced by *70 Block establish that Block participates each year in revising the RAL application and is obhged to do so by its agreements with Beneficial.

. New York courts have had occasion to address plaintiffs’ class action abuses (Meachum v Outdoor World Corp., 171 Misc 2d 354 [Sup Ct, Queens County 1996]; Stern v Carter, 97 Misc 2d 775 [Kings County], mod on other grounds 82 AD2d 321 [2d Dept 1981]), but not yet defendants’.

. In interpreting the class action provisions of CPLR article 9, New York courts have relied heavily on Federal precedent. (Brandon v Chefetz, 106 AD2d 162 [1st Dept 1985].) The necessarily broad power of the New York Supreme Court, pursuant to CPLR 907, to supervise and control class action litigation, paralleling the power of a Federal District Court under Federal Rules of Civil Procedure rule 23 (Gulf Oil Co. v Bernard, supra) has gradually been recognized. (Cf., Friar v Vanguard Holding Corp., 78 AD2d 83 [2d Dept 1980]; City of Rochester v Chiarella, 86 AD2d 110 [4th Dept 1982], appeals dismissed 56 NY2d 923, affd 58 NY2d 316 [1983]; Klurfeld v Equity Enters., 79 AD2d 124 [2d Dept 1981].)

. Block contends that contact prior to class certification is not violative of DR 7-104 (A) (1) (22 NYCRR 1200.35 [a] [1]), because prior to certification members of the class are not represented by class counsel. However, the court relies on its authority to supervise the class action process and duty to protect the putative class. Block does not suggest that the court’s authority is limited to enforcing the disciplinary rule. The court agrees with the Block defendants that the applicability of DR 7-104 (A) (22 NYCRR 1200.35 [a] [1]) to the circumstances of this case is questionable.