Stephen **PAYNE**, et al., Plaintiffs,

v.

**THE GOODYEAR TIRE & RUBBER CO.**, Defendant.

Civ.A. No. 01–10118–NG.

United States District Court,
D. Massachusetts.

April 24, 2002.

Kevin T. Peters, Todd & Weld, Boston, MA, for Stephen Payne, et al., Plaintiff.

James K. Archibald, Jeffrey A. Dunn, Douglas R. Kay, Venable, Baetjer, Howard & Civiletti, Washington, DC, Michelle I. Schaffer, Richard L. Edwards, Campbell, Campbell, Edwards & Conroy, Boston, MA, for the Goodyear Tire & Rubber Co., Defendant.

## ORDER ON PLAINTIFFS' MOTION FOR ORDER PREVENTING DEFENDANT FROM EX PARTE COMMUNICATIONS WITH ABSENT CLASS MEMBERS

DEIN, United States Magistrate Judge.

This matter is before the court on "Plaintiffs' Motion for Order Preventing Defendant

from Ex Parte Communications with Absent Class Members" (Docket # 55). After consideration of the pleadings, counsels' argument and the post-hearing submissions to the court, the motion is DENIED. However, the defendant is ordered to maintain all samples taken during home inspections and notes or other documents relating to such inspections for later production if requested by the plaintiffs.

## BACKGROUND

This case arises out of a putative class action brought by plaintiffs seeking to represent a class of homeowners in New England dissatisfied with the performance of a Goodyear hose known as "Entran II" utilized in radiant floor heating systems distributed by "Heatway." Plaintiffs claim that Goodyear's hose was defective as manufactured and that Goodyear failed to warn consumers of the defect. Similar suits are pending in Colorado and New Mexico.

Plaintiffs now move this court for an order providing that defendant Goodyear be prohibited from engaging in any communications with putative class members. The motion was motivated by a web page sponsored by Goodyear which contains information about the Entran II hose and in which Goodyear offers free inspections of any system using the hose.[1] Plaintiffs contend that the information on the web page is false and misleading, and that improper communications may be taking place during the home inspections which are being conducted by as many as eight experts at one time.

By this motion, plaintiffs seek to prevent Goodyear's ex parte inspections of homes of absent class members. In the alternative, plaintiffs request an order requiring Goodyear to: (1) notify plaintiffs' attorneys immediately upon communicating with homeowners; (2) provide homeowners with information about this litigation; (3) notify plaintiffs' attorneys ten days prior to any home inspections; (4) provide plaintiffs' attorneys with an inventory of items removed from homes during inspection; and (5) pro-

vide plaintiffs' attorneys with all reports generated from inspections. For its part, Goodyear contends that plaintiffs have failed to present sufficient evidence to support the motion and that granting such a motion would violate its First Amendment rights. In addition, Goodyear has voluntarily modified its web page to serve primarily as an installation and maintenance manual, and to eliminate references to litigation. Because, as detailed herein, this court finds that plaintiffs' evidence is insufficient to support a ban on communications, the plaintiffs' motion is DENIED.

### Standard of Review

■ "Because of the potential for abuse [in class actions], a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 2200, 68 L.Ed.2d 693 (1981). "But this discretion is not unlimited, and indeed is bounded by the relevant provisions of the Federal Rules" of Civil Procedure, including Rule 23(d), governing class actions which gives the court discretion to "make appropriate orders: . . . (3) imposing conditions on the representative parties or on interveners . . . [and] (5) dealing with similar procedural matters." *Id.* at 99–100, 101 S.Ct. at 2199. Since limiting communications causes its own problems, an exercise of discretion limiting communication must be supported by a "clear record and specific findings that reflect a weighing of the need for a limitation and the potential for interference with the rights of the parties. Only such a determination can ensure that the court is furthering, rather than hindering, the policies embodied in the Federal Rules of Civil Procedure, especially Rule 23. In addition, such a weighing—identifying the potential abuses being addressed—should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Id.* at 101–02, 101 S.Ct. at 2200–01.

---

1. Plaintiffs contend that they learned about the inspections during a recent deposition taken in the New Mexico litigation.

Finally, any order imposing a serious restraint on expression must be "justified by a likelihood of serious abuses." The "mere possibility of abuses" is insufficient to support a ban on communications. *Id.* at 104, 101 S.Ct. at 2202.

A review of the record establishes that plaintiffs have not shown a likelihood of serious abuse warranting this court's interference, at this time, with Goodyear's ex parte communications.

### The Home Inspections

Plaintiffs have submitted excerpts from the deposition of Gary Tompkin, a Goodyear consultant, which establishes the following. Mr. Tompkin inspected the Heatway systems in the homes of some of the named plaintiffs in this action, as well as other homes with Entran II in New England. He has performed these free inspections when consumers contacted Goodyear in response to an offer posted on its website. The testimony indicates that at times he inspected a home alone, but on at least one occasion, eight individuals representing Goodyear were present.

Mr. Tompkin evaluated the homeowners' radiant heating systems and, at times, made recommendations on the spot. For example, the plaintiffs have submitted a portion of Mr. Tompkin's deposition in which he testified he told a homeowner why her system failed to work properly, attributing it to poorly installed valves and running the system at an excessively high temperature, and suggested corrective measures.

Mr. Tompkin has taken samples of hoses, valves, pumps and/or the fluid running through the system for evaluation. He also has taken notes concerning the systems which he has inspected, and indicated he has sent, or plans to send, reports to homeowners.

### The Website

The plaintiffs also submitted a copy of a website sponsored by Goodyear. The evidence before the court is that, for an unspecified time, Goodyear's website featured several pages addressing Heatway radiant heating systems and related issues. One page, entitled "Installation and Maintenance Notice to Heatway Entran II Systems Users," contains what Goodyear contends are corrective measures for malfunctioning Heatway systems ("Maintenance Notice"). Of more concern to the plaintiffs for the purposes of this motion is a page called "Facts About Entran II Hose and Heatway (CPS) Radiant Heating Systems" ("Facts"). The "Facts" page references litigation between Goodyear and Heatway, the distributor of the radiant heating systems which incorporated Goodyear's Entran II hose, and the fact that Heatway declared bankruptcy. It also states that after a three week trial, a jury "unanimously rejected Heatway's arguments and ruled that Entran II hose was fit for sale and use." There is no mention of the various other suits against Goodyear involving the Entran II hose, including suits which are pending and suits in which homeowners have prevailed.

Goodyear in the website claims that the "vast majority" of the systems are functional, and that non-functional systems are due to bad design, installation, operation or maintenance. It claims that Heatway's statements that Entran II is defective are "untrue" and that Goodyear relied on Heatway's design and installation expertise. The site states further that "Heatway let homeowners down by not carefully supervising the installation" of the systems. The site contains an offer to conduct an inspection and provide a written report and provides a toll-free number to contact Goodyear.

### New Developments

At oral argument, the court learned that plaintiffs' counsel also had a website concerning the Entran II hose. The court requested that the parties provide supplemental information, namely (1) whether the plaintiffs' counsel's own website provided a link or otherwise referred to Goodyear's website, and (2) whether Goodyear would be willing to provide a link to plaintiffs' website on the "Facts" page. In response, the plaintiffs' counsel indicated that while their website did not contain a link to Goodyear, they were agreeable to inserting one if Goodyear did

likewise. Goodyear notified the court that it was not prepared to provide a link to plaintiffs' counsel's webpage. However, Goodyear did remove its "Facts" section. The "Maintenance Notice" remains in an altered form. In the modified Maintenance Notice, Goodyear does continue to assert that the "vast majority of the more than 10,000 installations throughout the nation continue to perform satisfactorily" and that to the extent that a "small number of systems" have been experiencing problems, including damage to the Entran II hose, such problems arose because of "design, installation, operation and maintenance problems [which] should be corrected." There is no longer any reference to Heatway's bankruptcy or the jury verdict. The remainder of the site includes information of industry standards for the design, installation, operation and maintenance of hydronic heating systems.

## ANALYSIS

Considering all the evidence put forth by the plaintiffs, an order barring ex parte communication with absent plaintiffs is not justified by the record currently before the court. The plaintiffs have failed to show that the defendant has engaged in any threatened or actual abusive or unethical communications with putative class members.

### The evidence does not show that the website provides "coercive" or "misleading" information

■ Goodyear's presentation of fact on its website, as initially submitted, gave the court pause. In particular, the court was concerned that the limited reference to Heatway's bankruptcy and the Heatway verdict could potentially have created some confusion in consumers' minds as to their right or opportunity to participate in subsequent lawsuits. However, that potential problem has been eliminated by the voluntary changes made by Goodyear.[2]

What remains on Goodyear's website regarding Entran II hose is, in essence, the company's opinion on the hose's functionality. Plaintiffs claim that Goodyear's statements to homeowners that the hose is not defective and that malfunctioning systems are due to improper design, installation, maintenance or operation are "factually incorrect and therefore misleading." The text, however, concerns disputed issues of fact in this case and may not for that reason alone be characterized as "misleading." Plaintiffs' contention revisits issues addressed in this court's December 21, 2001 order which held that "plaintiffs' arguments are ill-suited for a ruling limiting discovery. These arguments may be more appropriately presented in connection with a motion squarely raising the legal issues for resolution."

The court finds that what the defendant represents as the text remaining on Goodyear's website with regard to Entran II is neither coercive nor misleading, and therefore does not support an order requiring Goodyear to alter its presentation to viewers of its website.

### There is insufficient evidence that the inspections are actually or inherently coercive or misleading

■ Goodyear also removed from its website the offer for a no-cost inspection. However, its toll-free phone number remains on the site and defendant did not indicate it would cease conducting such inspections. The court therefore assumes the inspections are continuing under the same or similar circumstances described in the deposition of Mr. Tompkin. With regard to the inspections, the plaintiffs delineated several areas of concern: the conditions of the inspections (the number of Goodyear representatives present and the length of the inspections); the fact that inspectors offer diagnoses and suggest corrective measures in person and in subsequent reports; and the inspectors' removal of system parts from the homeowners' premises. Plaintiffs claim that the effect of

2. There does remain a passing reference to litigation with Heatway and Goodyear's belief that it was Heatway's legal obligation to provide maintenance and installation materials to consumers. That reference does not relate to the principal issue in contention in this litigation, i.e., whether the hose is defective. Nor is this reference likely to affect potential class members' interest in joining the litigation.

Goodyear's inspections is that "homeowners may well conclude that it is a waste of time to participate in this action." However, there is no evidence that there was any discussion of litigation at all with the homeowners, or any attempt to obtain a release or any type of waiver from the homeowners.

The defendant does not contest the veracity of the statements in Mr. Tompkin's deposition concerning the circumstances of the inspections, but rather points to a lack of proof evidencing coercive conduct on Goodyear's part. This court agrees with Goodyear that the plaintiffs have not provided evidence which would lead to "a clear record and specific findings" tending to show "a likelihood of serious abuses." *Gulf Oil Co. v. Bernard*, 452 U.S. at 101, 104, 101 S.Ct. at 2200, 2202.

Admitting that there is no evidence of actual or threatened coercion of homeowners, plaintiffs claim that Goodyear's unsupervised inspections are "inherently coercive" and, therefore, must be controlled. Plaintiffs cite to *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193 (11th Cir.1985), where the court precluded ·unsupervised communications between the defendant bank and class members relating to the litigation, where the bank was seeking and did obtain a large number of "opt-outs" from the class. *See id.* at 1202. In *Kleiner*, however, the situation was inherently coercive because the "class consisted of Bank borrowers, many of whom were dependent on the Bank for future financing." *Id.* Moreover, "the high number of exclusion requests was witness to the inherent coercion of the Bank's machinations." *Id.*

Unlike *Kleiner* and other cases cited by the plaintiffs,[3] there is no evidence before the court that the relationship between Goodyear and absent class members is inherently coercive. Without commenting on potential theories of liability of the defendant, it is clear for the purposes of this motion that the plaintiffs

neither have, nor ever had, a *direct* business relationship with Goodyear, a provider of a component part in a system marketed by Heatway directly to the consumers. The fact of Goodyear's indirect commercial relationship with absent class members cannot, without more, sustain a finding that contact between them concerning the radiant heating systems involves inherent opportunities for coercion. *See Great Rivers Coop. of Southeastern Iowa v. Farmland Indus., Inc.*, 59 F.3d 764, 766 (8th Cir.1995) (absent proof of misrepresentation and likelihood of serious abuses, no restriction on defendant cooperative's communication with potential plaintiff members).

Notably, the record here contains no evidence allowing the inference that Goodyear is either pressuring plaintiffs to opt out of the litigation or covertly robbing plaintiffs of their opportunity to participate in the instant litigation: the record does not establish any communication with potential plaintiffs concerning litigation at all. *Compare Carnegie v. H & R Block*, 180 Misc.2d 67, 687 N.Y.S.2d 528, 531–32 (N.Y.Sup.Ct.1999) (defendant's requirement that putative plaintiffs sign misleading mandatory arbitration clause without informing them of ongoing litigation "patently deceptive"); *Fraley v. Williams Ford Tractor & Equip. Co.*, 339 Ark. 322, 342–43, 5 S.W.3d 423, 436 (1999) (financier of agricultural equipment coerced borrowers into signing release of claims). Plaintiffs' belief that homeowners will feel "discouraged" about the instant lawsuit is insufficient to warrant the court placing limitations on Goodyear's communications. *See, e.g., Basco v. Wal–Mart Stores, Inc.*, No. 00–3184, 2002 WL 272384, at *4 (E.D.La. Feb. 25, 2002) (mere fact of employee-employer relationship insufficient to find coercion, absent evidence of abusive conduct or attempts to prevent participation in litigation, no limit on defendant's communication with potential employee class members); *Lee v. Am. Airlines, Inc.*, No. 3:01–

---

3. *See, e.g., Hampton Hardware v. Cotter & Co.*, 156 F.R.D. 630, 633–34 (N.D.Tex.1994) (evidence of letters directly discouraging participation in lawsuit, the fact of an ongoing business relationship between the parties, and dependence of plaintiffs on defendant for wholesale supplies sufficient for court to prohibit all litigation-relat-

ed communication prior to class certification); *Bublitz v. E.I. duPont de Nemours & Co.*, 196 F.R.D. 545, 547 (S.D.Iowa 2000) (court found at-will employer-employee relationship inherently coercive, applying restrictions to contact between defendant and absent class members).

CV–1179–P, 2002 WL 226347, at *2 (N.D.Tex. Feb. 12, 2002) (mere possibility of abuse insufficient to limit defendant's communications with potential class members); *Jenifer v. Del. Solid Waste Auth.*, No. 98–270 MMS, 98–565 MMS, 1999 WL 117762, at *5–7 (D.Del. Feb. 25, 1999) (absent evidence of coercion or misleading information, no limits on communication except if release sought from potential class member, then notice of litigation must be given); *Burrell v. Crown Cent. Petroleum, Inc.*, 176 F.R.D. 239, 245 (E.D.Tex.1997) (employer may communicate with employees about litigation, including its opinion that lawsuit was simply a union strategy, absent evidence communications misleading, coercive or an attempt to encourage putative class members not to join the suit).

### CONCLUSION

"Plaintiffs' Motion for Order Preventing Defendant from Ex Parte Communications with Absent Class Members" (Docket # 55) is DENIED. Defendant is to preserve all samples, notes and reports obtained or generated in connection with the home inspections.

