Thomas McLAUGHLIN, et al., Plaintiffs,

v.

LIBERTY MUTUAL INSURANCE COMPANY, Defendant.

Civ.A. No. 03–10316–REK.

United States District Court, D. Massachusetts.

Aug. 13, 2004.

Douglas Hart, Frederick Puglisi, Shepard, Mullin, Richter & Hampton LLP, Los Ange-

les, CA, William A. Whelan, Shepard, Mullin, Richter & Hampton LLP, San Diego, CA, Andrew C. Pickett, Erik J. Winton, Jackson, Lewis, LLP, Boston, MA, for Liberty Mutual Insurance Company, Defendant.

Todd S. Heyman, Thomas V. Urmy, Jr., Shapiro, Haber & Urmy, LLP, Boston, MA, for George Carver, Thomas McLaughlin, Plaintiffs.

## MEMORANDUM AND ORDER

COHEN, United States Magistrate Judge.

This is an action brought by plaintiffs on behalf of themselves and who also seek class certification. At bottom, plaintiffs allege that the defendant, their employer, violated the Fair Labor Standards Act ("FLSA") (Count 1). Riding that same horse, plaintiffs also allege that the same conduct which was violative of the FLSA also violated G.L. c. 151, § 1A, for which plaintiffs seek the customary and usual treble damages (Count 2). Count 1, as this court understands it, has already been allowed to proceed as a collective action under the FLSA, to wit: 29 U.S.C. § 216(b), and some forty-one (41) employees of the defendant have opted in to that collective action.[1] Plaintiffs seek traditional opt-out certification as a class *vis a vis* Count 2

under the provisions of Rule 23, F.R. Civ. P. As of yet, no class has been certified under Count 2.

With respect to Count 2, a number of motions were referred to this court for disposition under Rule 2(a) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts as the emergency magistrate judge,[2] to wit: (1) Plaintiffs' Emergency Motion for Order Precluding Defendant from Conducting *Ex Parte* Interviews with Putative Class Members (# 55); (2) defendant's Request for Monetary Sanctions (# 59);[3] and defendant's Request for Curative Notice (# 59).[4] After hearing in open court on August 12, 2004, all motions were denied *ore tenus*. This Memorandum and Order memorializes those rulings.

1. By way the Plaintiffs' Emergency Motion for Order Precluding Defendant· from Conducting *Ex Parte* Interviews with Putative Class Members (# 55) (hereinafter "Emergency Motion"), counsel for the named plaintiffs, who just recently penned a misleading[5] missive to putative class members[6] —*i.e.*, to the defendant's employees—without notice to the defendant, seeks to enjoin the

---

1. None of the matters referred to this court for disposition touch upon Count 1 of the complaint.

2. As this court indicated in an earlier order (# 57 n. 2):

   In the absence of Judge Keeton, to whom this case is assigned, the matter was referred to the miscellaneous business docket judge. That judge, in turn, ordered the matter referred to a magistrate judge for disposition. In the ordinary course, the matter would have been referred to Magistrate Judge Robert Collings, the magistrate judge assigned to the case. But in the absence of Judge Collings, the matter was referred to this court as the emergency magistrate judge.

3. This "Request", as well as a Request for Curative Notice, are subsumed as part of defendant's opposition (# 59) to Plaintiffs' Emergency Motion for Order Precluding Defendant from Conducting *Ex Parte* Interviews with Putative Class Members. On this occasion, this court will treat these "Requests" as motions. In the future, however, counsel shall comply with the requirements of Rule 7.1 of the Local Rules of this Court. That is particularly true given that this court is now docketing under the CM/ECF case

management procedures, where motions should be docketed in a manner by which it can be readily indicated that action, or no action, has been taken thereon. That case management system permits the judicial officers and staff to query the CM/ECF database for outstanding motions awaiting disposition. That query would be an empty one, however, if motions, not to mention requests, are buried in an opposition to other motions.

4. See footnote 3, *supra*.

5. The missive was misleading in terms of describing the temporal scope of the putative class, but this court finds, and defendant does not seemingly gainsay, that misstatement was not intentional.

6. The very fact that counsel for plaintiffs was able to, without any discernable difficulty, send letters to all putative class members *vis a vis* Count 2 rather augers against a notion—advanced in Count 2 of the Complaint—that the case would be unmanageable absent class status. But that, of course, is, in the end, a matter left to the sound discretion of the district judge to whom this case is assigned.

defendant, by and through its agents, from interviewing its own employees.

That motion is denied. In their moving papers, plaintiffs, by and through counsel, intimate (Emergency Motion, p. 3) that interviews by attorneys for the defendant of the defendant's own employees, none of whom are parties in any capacity to this action,[7] is unethical—*i.e.,* that such conduct violates Rule 4.2 of the Canons (Supreme Judicial Court Rule 3:07); plaintiffs also contend that established Rule 23 precedent *vis a vis* communications with *putative* class members mandates an order precluding such interviews.

To the extent that plaintiffs contend that any such interviews would be unethical, there are two answers—both of which are short. First and foremost, counsel for plaintiffs, at oral argument, conceded that Canon 4.2 (Supreme Judicial Court Rule 3:07) does *not* government interviews of *putative* class members. Secondly, even if it could be said that Canon 4.2—and, hence, Supreme Court Rule 3:07—did govern, then no further action by this court would be warranted. And that is because, if Rule 3:07 is as plaintiffs say it is, then such conduct would be violative of, and hence proscribed by, Rule 83.6(4)(B) of the Local Rules of this Court.[8] Saying it twice would be, in the circumstances, adds nothing but redundancy.

To the extent that plaintiffs contends that Rule 23 precedent mandates that such interviews *not occur,* this court is not persuaded.

As a general rule, as plaintiffs seemingly concede (Emergency Motion, p. 5), nothing in Rule 23 precludes communications with *puta-*

*tive* class members from either side of the litigation. As one court has recently put it (*Pruitt v. City of Chicago, Dept. of Aviation,* 2004 WL 1146110 *2 (N.D.Ill. May 20, 2004)):

Plaintiffs filed a motion to strike and/or exclude statements procured by Defendant from putative class members. Plaintiffs allege that Defendant's attorneys (1) participated in ex parte communications with putative class members; (2) have been undermining the express purpose of Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to determining whether a class should be certified; and that as such (3) have committed violations of the ethical rules of professional conduct. The court finds that these allegations are without merit.

In this case, Plaintiffs have not supported their contention that any abuse took place as a result of Defendant's communications with the alleged putative class members. Plaintiffs claim that Defendant improperly contacted putative class members. This raises issues concerning whether or not the court needs to issue a protective order prohibiting communications between the parties and putative class members. The purpose of a protective order is to ensure that the putative class members' rights are protected and that the intent of Rule 23 is not undermined. The Seventh Circuit has stated that each side of an action generally has a "right" to send a communication to class members. *E.E.O.C. v. Mitsubishi Motor Mfg. of America, Inc.,* 102 F.3d 869, 870 (7th Cir.1996). While a court has limited "power to restrict communications be-

---

**7.** As we have indicated above, beyond the named plaintiffs, a number of defendant's employees—some forty-one (41) according to the plaintiffs—are opt-in parties *vis a vis* Count 1. Defendant has represented, however, that it does not intend to interview any of its employees who are parties in any capacity with respect to Count 1, and plaintiffs do not contend to the contrary.

**8.** Rule 83.6(4)(B) provides:

(B) Acts or omissions by an attorney admitted to practice before this court pursuant to this Rule 83.6, or appearing and practicing before this court pursuant to Rule 83.7, individually or in concert with any other person or persons, that violate the ethical require-

ments and rules concerning the practice of law of the Commonwealth of Massachusetts, shall constitute misconduct and shall be grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship. The ethical requirements and rules concerning the practice of law mean those canons and rules adopted by the Supreme Judicial Court of Massachusetts, embodied in Rules 3:05, 3:07 and 3:08 of said court, as they may be amended from time to time by said court, except as otherwise provided by specific rule of this court after consideration of comments by representatives of bar associations within the Commonwealth.

tween defendants and putative class members before the class is even certified ... such control is designed to prevent abuse of the class action process" such as "[c]ommunications that undermine the purposes of Rule 23 includ[ing] misleading communications and communications which affect a putative class members' decision to participate in the class action." *Wiginton v. Ellis*, 2003 WL 22232907, at *2 (N.D.Ill.2003)(citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99–100 n. 12, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981)). Generally, a Court issues "an order limiting discovery communications between parties and potential class members" only if such an order is warranted "based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Williams*, 204 F.3d at 759. There is no evidence that Defendant abused the class action process or was involved in misleading communications.[9] In addition, Plaintiffs have failed to supply this court with any evidence—except for three paragraphs of speculation—that any of the putative class members' rights were in any way threatened by such communication. Pl.'s Mot. To Strike pages 4–5. Plaintiffs also claim that Defendant's attorneys have committed violations of the ethical rules of professional conduct. Such an allegation is a serious allegation and needs to be supported.

Plaintiffs say, however, that the rule is otherwise when the putative class members are employees of the defendant. Citing a few cases hither and thither (Emergency Motion, p. 7), plaintiffs say that the employer-employee relationship is all that is required to warrant preclusion of communications because that relationship is inherently coercive.

That may be the take of reality of the judges to whom plaintiffs refer, but this court sees it otherwise. That is particularly true where, as here, employees of the defendant have already shown that the nature of that relationship is not intimidating.[10]

In this court's view, closer to home, and not referred to by the plaintiffs, Judge Gorton of this court, and not those referred to by plaintiff, got it right. In *Payne v. The Goodyear Tire & Rubber Company*, 207 F.R.D. 16, 21–22 (D.Mass.2002), Judge Gorton observed, *inter alia* (*Id.*):

> Notably, the record here contains no evidence allowing the inference that Goodyear is either pressuring plaintiffs to opt out of the litigation or covertly robbing plaintiffs of their opportunity to participate in the instant litigation: the record does not establish any communication with potential plaintiffs concerning litigation at all. *Compare Carnegie v. H & R Block*, 180 Misc.2d 67, 687 N.Y.S.2d 528, 531–32 (N.Y.Sup.Ct.1999) (defendant's requirement that putative plaintiffs sign misleading mandatory arbitration clause without informing them of ongoing litigation "patently deceptive"); *Fraley v. Williams Ford Tractor & Equip. Co.*, 339 Ark. 322, 342–43, 5 S.W.3d 423, 436 (1999) (financier of agricultural equipment coerced borrowers into signing release of claims). Plaintiffs' belief that homeowners will feel "discouraged" about the instant lawsuit is insufficient to warrant the court placing limitations on Goodyear's communications. *See, e.g., Basco v. Wal–Mart Stores, Inc.*, No. 00–3184, 2002 WL 272384, at *4 (E.D.La. Feb. 25, 2002) (*mere fact of employee-employer relationship insufficient to find coercion, absent evidence of abusive conduct or attempts to prevent participation in litigation, no*

---

9. *I.e.*, the very conduct that counsel for plaintiffs have engaged in by sending, albeit mistakenly, incorrect and misleading to all of defendant's employees who are *putative* class members.

10. Plaintiffs say that the two named plaintiffs did not opt into a class in a related case (*Thomas Dooley v. Liberty Mutual Insurance Co.*, Civil Action No. 01–11029–REK) because, as employees, they were "fearful of retaliation for exercising their rights." (Emergency Motion, pp. 6–7).

It is readily apparent, however, that suggestion is sheer poppycock, given that they have filed a direct suit against the defendant in this case. And if more is needed, the fact that, according to plaintiff (Emergency Motion, pp. 2–3), some forty-one (41) other employees have already joined plaintiffs' fray against the defendant in the FLSA action brought under Count 1 speaks volumes against any fair notion that the relationship in this case is "inherently coercive".

*limit on defendant's communication with potential employee class members*); *Lee v. Am. Airlines, Inc.*, No. 3:01–CV–1179–P, 2002 WL 226347, at *2 (N.D.Tex. Feb. 12, 2002) (mere possibility of abuse insufficient to limit defendant's communications with potential class members); *Jenifer v. Del. Solid Waste Auth.*, No. 98–270 MMS, 98–565 MMS, 1999 WL 117762, at *5–7 (D.Del. Feb. 25, 1999) (absent evidence of coercion or misleading information, no limits on communication except if release sought from potential class member, then notice of litigation must be given); *Burrell v. Crown Cent. Petroleum, Inc.*, 176 F.R.D. 239, 245 (E.D.Tex.1997) (*employer may communicate with employees about litigation, including its opinion that lawsuit was simply a union strategy, absent evidence communications misleading, coercive or an attempt to encourage putative class members not to join the suit*). (Emphasis added).

This court is of the view that the assumptions of Judge Gorton, and of other to whom he refers (*e.g., Basco v. Wal–Mart Stores, Inc.*, No. 00–3184, 2002 WL 272384, at *4 (E.D.La. Feb. 25, 2002); *Burrell v. Crown Cent. Petroleum, Inc.*, 176 F.R.D. 239, 245 (E.D.Tex.1997)), is the more compatible with life and logic. Absent some showing of past abuse, or of an intention of future abuse, neither of which is suggested by plaintiffs, three is no reason to chill the defendant and its agents in its pursuit of the truth. As a matter of discretion, therefore, Plaintiffs' Emergency Motion for Order Precluding Defendant from Conducting *Ex Parte* Interviews with Putative Class Members (# 55) [11] is accordingly denied.

2. By was of its Request for Monetary Sanctions (# 59), defendant seeks to enrich its coffers, contending that the fact that the counsel for plaintiff improperly communicated with putative class members, and filed its Emergency Motion without a basis in fact. Neither suggestion warrants the relief sought. Just as this court has said that defendant may communicate with putative class defendants, so can the plaintiffs. To be sure, the missive which was posted by the plaintiffs was inaccurate in terms of the temporal scope of the putative class, but counsel for plaintiffs represent, and this court finds, that that error was unintentional. That hardly warrants Rule 11 relief. Even more so with the assertion that the Emergency Motion was filed without a basis of fact. After all, there are those judicial officers [12] who have seemingly accepted the argument of plaintiffs that any communication with putative class members in the context of an employer-employee relationship is inherently coercive. That this court—as other courts— have opt for a contrary view does not make the motion one which was filed without a basis in fact. The Request for Sanctions (# 59) is accordingly denied.

3. By way of defendant's Request for Curative Notice (# 59), defendant seeks the issuance of a curative notice to putative class members indicating that the missive sent to those same putative class members was erroneous insofar as it referred to the temporal scope of the proposed class. That invitation is denied. This court has already indicated that defendant is free to conduct such interviews of its own employees as it chooses. Defendants may properly advise those who are interviewed that plaintiffs' counsel did not get it right on the first occasion—*i.e.,* that plaintiffs' counsel incorrectly, but not intentionally, assessed the temporal scope of the proposed class. Nothing further is required, and defendant's Request for Curative Notice (# 59) is accordingly denied.

---

**11.** At oral argument, counsel for defendant, by and through counsel, represented that it seeks to conduct the interviews so that it can realistically assess the scope and nature of the case brought against it. There is nothing inherently wrong with that. And if it be that, during the course of frank and non-coercive interviews, the employer and employee resolve their potential disputes, all the better. One can hardly gainsay the notion that there is nothing inherently wrong—and, indeed, it is inherently better—that putative litigants resolve their beefs and disputes short of full-scale litigation and all that litigation entails. Apart from the fact that the coffers of class action counsel receives less than expected, a *de minimum* matter in this court's view, informal resolution of such disputes is a win-win proposition.

**12.** See the cases cited in the Emergency Motion at p. 7.

The file is hereby ordered returned to the Clerk.